UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

NEW RICHMOND PARENTS FOR STRONG
SCHOOLS, UA.,

     Plaintiff,

v.                                                                    Case No. 3:26-cv-316

SCHOOL DISTRICT OF NEW RICHMOND
BOARD OF EDUCATION,

     Defendant.

## COMPLAINT

Plaintiff alleges its complaint against Defendant as follows:

### INTRODUCTION

1.     This case seeks to protect the right of girls to privacy, dignity, and equal access to school facilities. The New Richmond School District ("the District") has violated those protections by enforcing a policy that allows male students to use girls' bathrooms based on gender identity rather than biological sex. For generations, as reflected in Title IX, schools have maintained separate facilities for boys and girls to protect students' bodily privacy in these intimate spaces. The District's policy abandons that principle and has real consequences. Female students now avoid restrooms, miss class time, and experience anxiety and loss of privacy, while being directed to use separate, single-stall bathrooms if they are uncomfortable. Parents have objected, but the District has refused to change course and instead requires girls to bear the burden. Federal law does not permit that result. Plaintiff brings this

action to ensure that girls in the District are afforded the privacy and equal access guaranteed to them under Title IX and the Constitution.

## PARTIES

2.     Plaintiff New Richmond Parents for Strong Schools, UA, is an unincorporated association comprised of students and parents of students who are or were enrolled in the New Richmond School District.

3.     Defendant School District of New Richmond Board of Education is a school board vested with authority to manage, direct, and supervise the operations of the School District of New Richmond, a common school district organized under the Wisconsin Constitution, Chapters 115 to 121 of the state statutes, and under other applicable state laws and regulations.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

5.     Venue is appropriate in this district under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial part of the events giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

6.     New Richmond Parents for Strong Schools (herein referred to as the "Association") is an unincorporated association comprised of students and parents of students who are or were enrolled in the New Richmond School District (herein referred to as the "District").

7. Defendant receives federal funding such that it is subject to the Title IX regulations.[1]

8. Title IX explicitly permits sex-separated bathrooms and locker rooms. 34 C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex.").

9. Sexual harassment under Title IX includes "unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access" to an education program or activity. 34 C.F.R. § 106.30.

10. "[C]ourts have long found a privacy interest in shielding one's body from the opposite sex in a variety of legal contexts." *Adams by & through Kasper v. Sch. Bd. Of St. Johns Cnty.*, 57 F.4th 791, 805 (11th Cir. 2022) (listing cases); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (noting that "[t]he right to privacy is now firmly ensconced among the individual liberties protected by our Constitution.").

11. Courts have recognized a right to privacy both as to one's unclothed body and as to one's "*partially* clothed body." *See, e.g., Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3d Cir. 2011) (listing cases); *Poe v. Leonard*, 282 F.3d 123, 138 (2d Cir. 2002).

---

[1] National Center for Education Statistics, District Directory Information (2024-25 School Year) New Richmond School District, https://nces.ed.gov/ccd/districtsearch/district_detail.asp?DistrictID=5510620&ID2=5510620&Search=2&details=4 (last visited March 31, 2026).

12.     This privacy right applies, especially, to protect one's body from view by members of the opposite sex. *See, e.g., Luzerne Cnty.*, 660 F.3d at 177; *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008).

13.     This privacy interest is even more "heightened" when children and adolescents are involved, because their bodies "are still developing, both emotionally and physically," *Adams*, 57 F.4th at 804 (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020) (Niemeyer, J., dissenting)), and because children and adolescents tend to be "extremely self-conscious about their bodies," *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1323 (7 Cir. 1993); *see also Safford Unified Sch. Dist. No. 1. v. Redding*, 557 U.S. 364, 375 (2009).

14.     Indeed, this right of privacy is the very reason that "sex-separated bathrooms ha[ve] been widely recognized throughout American history and jurisprudence." *Adams*, 57 F.4th at 805.

### The New Richmond School District's Policy of Allowing Transgender Students to Use the Opposite Sex Bathroom

15.     Upon information and belief, the New Richmond School District has a policy allowing students to use bathrooms based on gender identity.

16.     The aforementioned policy has resulted in at least one biological male being present in the girls' bathrooms while biological girls were present, causing anxiety and stress for the girls.

17.     The Association is comprised of students and parents of students who are or were enrolled in the District, many of whom attend the high school that is also attended by a male student who identifies as female and uses the girls' bathrooms.

18. The members of the Association are virtually all girls or the parents of girls.

19. The members of the Association have a direct, substantial, and legally protectable interest in protecting the bodily privacy of minor students from members of the opposite sex while in the District's bathrooms.

20. The members formed the Association specifically to encourage the District to implement a policy that separates bathrooms based on biological sex.

21. Indeed, each member signed a membership letter explaining that, "[t]he Association's mission is to preserve safety and privacy for children in public school districts in Wisconsin by, among other things, participating in litigation to ensure that multi-use bathrooms and locker rooms in school districts remain separated by biological sex."

22. The female student members of the Association have expressed anxiety or fear about using the bathroom at school if a boy could be present or come into the bathroom while they are using it. The parents in the Association share these concerns.

23. Some families are seriously considering withdrawing their children from the school district to protect their safety and privacy if the District continues to allow students who assert a transgender identity to use whatever bathroom they want.

24. Specifically, N.D. has a daughter, A.D., who is 15 years old and a freshman at New Richmond High School. A male student using the girls' bathrooms has impacted her privacy and education and has resulted in her feeling less safe.

25.    N.D. and A.D. are both members of the Association.

26.    A.D. is concerned that the bathroom policy could also apply to girls' locker rooms, where students are required to change clothes.

27.    On or about February 4, 2026, N.D. met with District Superintendent Troy Miller to seek clarification regarding District policies on boys having access to girls' bathrooms and locker rooms.

28.    During the meeting between N.D. and Superintendent Miller, he stated that transgender students are allowed to use bathrooms and locker rooms that align with their gender identity.

29.    Superintendent Miller refused to confirm or deny for N.D. whether any particular male student had used a girls' locker room while her daughter was present. N.D. found it alarming that the District refused to say whether her daughter may have been exposed to a male student in a girls' locker room during a required physical education class.

30.    N.D. informed Superintendent Miller that her daughter had just completed her first semester of physical education, during which she and other girls were required to change clothes in the girls' locker room.

31.    No prior notice, disclosure, or opportunity for parental input was provided regarding implementation of the challenged policy.

32.    A.D. reported that an upperclassman transgender student, whom she understands to be a biological male, has been using the same restroom that she regularly uses and that this has been occurring throughout the entire school year.

33.     A.D. reported that the student frequently remains in the restroom beyond simply using the facilities, the student stands at the mirror adjusting hair and makeup, adjusting bra padding, and using a cell phone, and the student has been observed using the phone camera.

34.     Due to use of the cell phone, A.D. is concerned that the male student in the girls' bathroom may be taking photos or videos of the female students.

35.     A.D. cannot use the restroom without significant discomfort. The student is much taller and physically larger than most of the female students. This results in the daughter of N.D. feeling fearful and unsafe.

36.     As a result of these experiences, A.D. now avoids using the restroom whenever possible and experiences anxiety related to normal biological needs during the school day. She is unable to adequately focus on her education because she is displaced from a space designated for her use where she should feel safe. A.D. does not want to be seen as rude or mean so she does not say anything. She has heard that other female students who have raised concerns have been called racist and transphobic. A.D. feels unable to advocate for herself in this situation.

37.     Superintendent Miller shared with N.D. that there are approximately four single-stall restrooms in the high school and that if her daughter is uncomfortable, she may go to the nurse's office and use the nurse's private single-stall restroom. Superintendent Miller also stated that A.D. would be given a pass if she were late to class as a result.

38.    A.D. has effectively been told to ignore her discomfort, fears, and instincts in order to accommodate others and that her boundaries do not matter. N.D. feels this directly undermines her efforts as a parent to teach her daughter self-advocacy, personal safety, and respect for her own boundaries. This situation has resulted in emotional distress, loss of privacy, avoidance of restroom use, anxiety, and disruption to her daughter's educational experience.

39.    S.H. is a member of the Association and is the parent of three children who attend schools in the New Richmond School District, one in high school and two in elementary school.

40.    S.H. and their family chose to move to New Richmond specifically because they believed the District would provide a high-quality education and a safe environment for their children. They now believe that the District is implementing policies that harm students and is not being transparent about those policies with parents. This undermines the trust that informed their decision to move to the District.

41.    While concerns about the bathroom policy arose due to events occurring at New Richmond High School, S.H. fears that her younger children could be subjected to similar policies or practices without her knowledge. She is particularly concerned that the District is not providing clear information to parents about these policies, limiting her ability to protect and advocate for her children. This ongoing uncertainty and lack of transparency has caused S.H. and her family to experience

stress, worry, and frustration, and has diminished their confidence in the District's ability to act in the best interests of all students.

42.    H.F. is the parent of two children who attend school in the New Richmond School District, one in high school and one in middle school.

43.    E.F. is the daughter of H.F. They are both members of the Association.

44.    E.F. was informed in the fall of 2025 that a male was using the girls' bathrooms. She was surprised and then scared. E.F. felt anxiety surrounding the use of the bathroom because of the possibility of a male student walking in.

45.    School administrators told E.F. that if she or other girls were uncomfortable with a male using the girls' bathrooms, they would need to use one of the four single-stall bathrooms instead. This directive effectively requires the girls to alter their behavior to avoid the spaces designated for their use.

46.    To facilitate this arrangement, school administrators posted maps throughout New Richmond High School identifying the locations of the single-stall bathrooms designated for students who did not wish to share the girls' bathrooms with a male student. An example of one such map is shown below.



47.     E.F. misses class time because all of the single-stall bathrooms are located on the opposite side of the school from her classrooms, requiring her to walk a long distance each time she needs to use them.

48.     E.F. is also forced to miss parts of her lunch hour in order to use the single-stall bathrooms. One of the single-stall bathrooms designated for girls' use has wait times because it is located in the teacher lounge and often occupied by staff. This arrangement disrupts E.F.'s ability to eat and participate fully in her school day.

49.     E.F. experiences significant anxiety and discomfort over the possibility that male students may also be allowed in girls' locker rooms. She fears that if boys are permitted to use girls' bathrooms, girls could be forced to change in front of boys or be exposed to boys' bodies against their will, creating a situation that threatens girls' privacy, safety, and sense of security.

50.     J.T. is the parent of a daughter, S.T., who attends school in the New Richmond School District at New Richmond High School.

51.     J.T. and S.T. are both members of the Association.

52.     S.T. went to the school office to raise concerns and seek clarification about the bathroom policy. She was told that if sharing a bathroom with a male student made her uncomfortable, she could use the single-stall bathroom in the office.

53.     New Richmond High School principal and vice principal told S.T. that they cannot keep the boy out of the girls' bathroom. The vice principal specifically told her that if she walks into the closest girls' bathroom and there is a male student that she doesn't feel comfortable with, she should walk out and can use the single-stall bathrooms on the first floor or any other bathroom that she would like to use. They told her that if she is late to class as a result, she could obtain a pass.

54.     After S.T. attempted to raise her concerns with school administrators and received no meaningful response, J.T. shared a Facebook post on or about January 30, 2026, expressing concern that the District was failing to protect girls' rights and privacy. Following that post, S.T. was criticized and threatened at school because of her mother's statements, causing her to feel uncomfortable and fearful about returning to school.

55.     J.T. then reached out to Superintendent Miller and members of the school board to formally address her concerns about the bathroom use policy. On February 3, 2026, Superintendent Miller responded, refusing to confirm whether a boy was using the girls' bathrooms at New Richmond High School, but explaining his belief that the school is required "to allow transgender students to use the bathrooms and locker rooms that are consistent with their gender identity."

56.     Superintendent Miller then reiterated to J.T. that the District has single-stall bathrooms that her daughter can use and that she will be excused from any     tardies     should     she     miss     class     as     a     result.

> ████████ is absolutely able to continue to use the girls' bathroom and locker room, and no one is forcing your daughter out of these facilities. Please know that if █████ is not comfortable using the girls' bathroom, we do have single, private bathrooms available for her to use. She will be excused from any tardies she may receive if using this bathroom interferes with her ability to arrive at the start of class. It is ████████ choice about which bathrooms she would feel more comfortable using.

57.     When J.T. raised concerns with Superintendent Miller about the bullying S.T. experienced in response to the Facebook post, he did not address the harassment or take any meaningful steps to protect her. Instead, he instructed J.T. to talk with her daughter about how to discuss the rights and experiences of transgender students and simply encouraged S.T. to bring her own concerns to school administrators. In effect, Superintendent Miller left S.T., the student being targeted, to navigate the situation on her own, and the District took no meaningful action to address the bullying she faced.

58.     In response to J.T.'s concerns, the District referred the matter to its Title IX Coordinator. On or about February 17, 2026, the Coordinator emailed J.T. stating that the District "will not be taking any further action on your requests as your allegations do not rise to the level of a complaint," and further concluded that J.T. had "not alleged any instances of harassment or discrimination," despite her reports of bullying directed at S.T.

59.     On February 10, 2026, the School District of New Richmond Board of Education held a meeting which was widely attended by parents, students, and

community members. Many of them raised concerns about the bathroom policy and urged the Board to implement a policy that separates bathrooms by sex. The Board declined to do so.

60. Concerns about the current policy are not limited to the individual instances described above. Several female students at New Richmond High School have expressed that the policy, which allows students to access facilities based on self-selected gender identity, creates ongoing uncertainty and discomfort. These students lack any reliable way to know who may enter the girls' bathrooms, raising concerns about privacy, safety, and their ability to use school facilities without fear or intrusion.

61. Members of the Association share these concerns and are aware of the risks associated with permitting male students to access girls' bathrooms.[2]

62. Despite repeated concerns raised by members of the Association and other parents, students, and community members, the District has maintained its policy. As a result, students continue to experience loss of privacy, disruption to their education, and anxiety regarding the use of school facilities. These harms are ongoing and will continue without appropriate relief from the Court.

---

[2] Max Eden, *What Happened in Loudon Schools*, American Enterprise Institute (Dec. 13, 2022), https://www.aei.org/op-eds/what-happened-in-loudoun-schools/; Sarah Jean Green, *Former Student Files Lawsuit Against Seattle Public Schools in Connection with 2018 Sexual Assault at Ballard High School*, The Seattle Times (Dec. 18, 2020), https://www.seattletimes.com/seattle-news/law-justice/former-student-files-lawsuit-against-seattle-public-schools-in-connection-with-2018-sexual-assault-at-ballard-high-school/.

## CAUSES OF ACTION

### CLAIM ONE: Violation of Title IX of the Education Amendments of 1972

63.     Plaintiff realleges and incorporates the preceding allegations of the complaint.

64.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

65.     "[T]he *entire point* of Title IX is to prevent discrimination based on sex." *Carroll Indep. Sch. Dist. v. United States Dep't of Educ.*, No. 4:24-CV-00461-O, 2025 WL 1782572, at *3 (N.D. Tex. Feb. 19, 2025) (quoting *Tennessee v. Cardona*, No. CV 2:24-072-DCR, 2025 WL 63795, at *3 (E.D. Ky. Jan. 9, 2025), *as amended* (Jan. 10, 2025) (emphasis in original)).

66.     The Defendant is punishing the girls in the District who do not want to share their bathroom and locker room with boys by making them stand in long lines to use a single-sex bathroom (because it is a single-user bathroom) and to have to undress and dress in a locker room with a boy present.

67.     Girls like A.D., S.T., and E.F. avoid using the restroom whenever possible, experience anxiety related to normal biological needs during the school day, feel displaced from a space that should feel safe and appropriate for girls' use, and feel less safety, dignity, and ability to focus on school.

68.     None of the parent members of the Association would allow a male to be in the bathroom with their daughters at home or in any other place that they can

control. They have tried to get the Defendant to protect their daughters in the same way, but the Defendant refuses to do so.

69.     The Defendant's policy has resulted in several female students waiting to use the single-stall bathrooms in order to protect their privacy and safety. As a result, these female students are inconvenienced, embarrassed, and miss class time.

70.     The conduct of the District amounts to harassment and the harassment is sufficiently severe or pervasive so as to create a hostile or abusive environment in an educational program or activity.

71.     Defendant can end this harassment by adopting a policy of sex-segregated bathrooms and locker rooms, but refuses to do so despite numerous requests to do so.

72.     The implementing regulations of Title IX specifically state that "[a] recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33 (2020).

73.     Rather than protect the privacy of female students in the District's schools, the Defendant has chosen to provide preferential treatment to males and adopt and implement a policy that discriminates against and harasses girls.

74.     Defendant has intentionally chosen to discriminate against and harass female students who attend schools in the District and has a policy allowing males to use the girls' bathrooms and locker rooms.

75. The Supreme Court has recognized an implied private right of action for the victim of illegal discrimination to enforce the statute, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979), as well as the ability to recover monetary damages, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992), and there is an implied right of action for a student to sue her school and school officials under Title IX.

76. Defendant receives federal funding such that it is subject to the Title IX regulations.

77. Defendant has decided that, in direct conflict with Title IX, it is okay for the female students to bear the burden.

78. Defendant's unwelcome conduct authorizing males to use the girls' bathrooms violates privacy and amounts to conduct that is so severe, pervasive, and objectively offensive that it effectively denies girls in the New Richmond School District, several of whom are members of the Association, from educational opportunities.

### CLAIM TWO: Violation of the Right to Privacy
### Civil Rights Act of 1871, 42 U.S.C. § 1983

79. Plaintiff realleges and incorporates the preceding allegations of the complaint.

80. The Civil Rights Act of 1871 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives any "citizen of the United States or other person" of any rights "secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

81.    The Fourteenth Amendment Due Process Clause protects citizens against violation of fundamental rights by state actors.

82.    Fundamental rights are liberty interests deeply rooted in the nation's history and tradition implicit in the concept of ordered liberty.

83.    Student members of the Association have a fundamental right to bodily privacy that includes protection from exposure of their body and intimate activities to a person of the opposite sex.

84.    The right to bodily privacy is deeply rooted in the nation's history and tradition. *See e.g., Adams*, 57 F.4th at 804–05 (listing cases); *Canedy*, 16 F.3d at 185 (noting that "[t]he right to privacy is now firmly ensconced among the individual liberties protected by our Constitution."); *Luzerne Cnty.*, 660 F.3d at 176–77 (listing cases); *Leonard*, 282 F.3d at 138; *Brannum*, 516 F.3d at 494.

85.    This right to bodily privacy is especially strong in the school setting, where students have no practical choice but to use bathrooms, locker rooms, and similar facilities and reasonably expect not to be exposed to members of the opposite sex while in states of undress.

86.    The District has adopted a policy that permits males to use girls' bathrooms based on gender identity rather than biological sex.

87.    The policy authorizes the presence of males in spaces where female students engage in inherently private activities, forcing them to either forgo use of such facilities or use them under conditions that compromise their privacy.

88. In doing so, the District's policy infringes upon the fundamental right to bodily privacy of student members of the Association.

89. As a direct result, Plaintiff has suffered and will continue to suffer irreparable harm, including the loss of constitutionally protected privacy rights.

## CLAIM THREE: Sex Discrimination
## Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983

90. Plaintiffs reallege and incorporate the preceding allegations.

91. The Civil Rights Act of 1871 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives any "citizen of the United States or other person" of any rights "secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

92. Sex discrimination is prohibited by the 14th Amendment. *United States v. Virginia*, 518 U.S. 515, 533, 572 (1996).

93. When sex discrimination is present, the burden "rests entirely" on the government to offer an "exceedingly persuasive" justification for the classification, proving that the "classification serves important governmental objectives and [that] the discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 533 (citations and internal quotation marks omitted).

94. A plaintiff may assert a sex-discrimination claim under both Title IX and Section 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 259 (2009).

95.    Plaintiff members, including those identified specifically above, have been subjected to discrimination on the basis of sex.

96.    The District's policy operates in practice to burden only female students by permitting male students to access facilities designated for girls.

97.    The policy results in male students entering girls' restrooms while female students do not, in practice, access boys' facilities in the same manner. As a result, the loss of sex-specific privacy protections falls on girls.

98.    This forces the student members of the Association to either forgo use of bathrooms and locker rooms, wait in line to use single-stall bathrooms, sometimes resulting in missing class time or lunch time, or use such facilities in the presence of male students, subjecting them to unequal treatment on the basis of sex.

## REQUEST FOR RELIEF

Plaintiff therefore requests the following relief:

A.    A declaration that Defendant's actions and practices violate Plaintiff's rights under Title IX by forcing their children to suffer a loss of education;

B.    A declaration that Defendant's actions and practices violate Plaintiff's constitutional rights under the 14th Amendment;

C.    A permanent injunction enjoining the Defendant's policy and ordering Defendant to permit only females to enter and use the District's girls' private facilities and only males enter and use the boys' private facilities;

D.    Award appropriate damages, including compensatory and nominal damages;

E.     Award Plaintiff its attorney fees under 42 U.S.C. § 1988;

F.     Award costs and any such other relief as the Court deems appropriate.

Dated: April 10, 2026

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

*s/Cory J. Brewer*

Daniel P. Lennington
Cory J. Brewer
Lauren L. Greuel

1241 North Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

Dan@will-law.org
Cbrewer@will-law.org
Lauren@will-law.org

Attorneys for Plaintiff