UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

New Richmond Parents for Strong
Schools, UA.,

     Plaintiff,

v.

School District of New Richmond Board
of Education,

     Defendant.

Case No. 3:26-CV-316-wmc

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

---

## INTRODUCTION

This complaint asks the Court to do what the District would not—disregard a decade of legal precedent regarding transgender students' bathroom access and turn the anti-discrimination provisions that are intended to shield students from discrimination into a sword to discriminate against transgender students. Consistent with precedential case law in the Seventh Circuit, Defendant School District of New Richmond Board of Education (the "District") allows its students to use bathrooms consistent with their gender identities. Plaintiff New Richmond Parents for Strong Schools, UA (the "Association"), filed its complaint against the District on April 10, 2026, because the District refused to violate established law by segregating bathrooms based on students' sex assigned at birth. The District brings this motion to dismiss in lieu of filing an answer because the Association has failed to state a claim upon which the requested relief may be granted. No matter how

1

the court looks at Plaintiff's claims, it is clear they are unsupported in both law and fact and should be dismissed with prejudice.

## FACTS[1]

This case arises from the fears, anxieties, and concerns of certain students and parents in the New Richmond School District regarding the ability of transgender students to use the bathroom that aligns with their gender identity. Compl. ¶¶ 15, 17, 22, 32, 41.

The District's School Board is an elected public body tasked with overseeing the operations of the School District of New Richmond, a public school district located in New Richmond, Wisconsin. Compl. ¶ 3. New Richmond High School ("NRHS") is one of the schools in the School District.

Under Wisconsin law, the District is required to establish "written policies and procedures" to ensure that "no person…be denied participation in, be denied the benefits of or be discriminated against in any curricular, extracurricular, pupil services, recreational or other program or activity because of the person's sex…" Wis. Stat. § 118.13(1)-(2)(a) (2025-2026); *see also* Wis. Adm. Code PI § 9.03 (2) (2026) (requiring Wisconsin public school districts to adopt policies that conform to the requirements of Title IX). The District's policies establish its commitment to nondiscrimination consistent with these legal

---

[1] For the purposes of this motion, the District accepts as true the factual allegations asserted in the Complaint. *Bonnstetter v. City of Chi.*, 811 F.3d 969, 973 (7th Cir. 2016). The District reserves the right to challenge those factual allegations if this motion is not granted in its entirety.

2

mandates.[2] The District's Nondiscrimination and Access to Educational Opportunity Policy makes it clear that the District "does not discriminate on the basis of …sex, (including gender status, change of sex, or gender identity)…" Ex. 1. Similarly, the District has committed that it will not "discriminate on the basis of sex (including sexual orientation or gender identity), in its education programs or activities," as required by Title IX. Ex. 2.

Consistent with these legally mandated policies, students are permitted to use a bathroom that aligns with their gender identity. Compl. ¶ 28. At NRHS specifically, this means students may use the designated male or female restrooms that align with their gender identity, or single-stall restrooms located throughout the building.

During the 2025-2026 school year, District officials received inquiries from NRHS students and parents regarding transgender students. Compl. ¶¶ 27, 45, 52-53, 55-56. Several female students reported to District officials that they were uncomfortable with the possibility of using the same restroom as a transgender-female student. *See e.g.*, *id*. at ¶¶ 37, 45, 52. Several NRHS parents also met with District officials to ask whether transgender students were in fact using the female bathrooms at NRHS and to express their concerns regarding their students using the same restroom as a transgender student. *See id*. at ¶¶ 27, 29, 55.

---

[2] When reviewing a motion to dismiss, a district court may take judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies, even if such documents are not directly referenced in the complaint, without converting the motion to dismiss into a motion for summary judgment. *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

In its meetings with both NRHS students and parents, the District consistently explained that it was required by law to allow transgender students to access bathrooms that align with their gender identity. *Id*. at ¶¶ 28, 53, 55. The District also shared that students who did not wish to potentially use the same multi-stall bathroom as a transgender student could use any of the single-occupant bathrooms at NRHS, including the single-occupant bathroom in the nurse's office. *Id*. at ¶¶ 37, 45, 52, 56. The District further informed both students and parents that any student whose decision to use a single-occupant bathroom caused them to be late to class would be excused from any related tardies. *Id*. at ¶¶ 37, 53, 56. To help facilitate student awareness of single-occupant bathrooms, District officials posted maps identifying the location of single stall bathrooms at NRHS. *Id*. at ¶ 46.

On February 10, 2026, the District held a special meeting of the School Board to discuss pupil nondiscrimination and facility use. Ex. 3; *Id*. at ¶ 59. At this meeting, the District and its legal counsel presented the School Board and members of the public with an overview of the current law related to Title IX and the options available to the District to address concerns raised by students, parents, and community members regarding the District's bathroom policy. Ex. 3. The District also provided community members, including students and parents, an opportunity to share their concerns. *Id*. After the public comment period the School Board considered adopting a revised bathroom policy that would be contrary to existing law, but voted not to do so. *Id*.

Some parents and students have since undertaken efforts to pressure the District into changing its policy regarding bathroom access for transgender students. Amongst those

efforts was the formation of the Association. *Id*. at ¶ 20. The Association is an unincorporated association principally comprised of current and former female students of the District and their parents. *Id*. ¶¶ 6, 17. These individuals formed the Association for the express purpose of pressuring the District and School Board into implementing a policy that segregates bathrooms on the basis of a student's sex assigned at birth.[3] *Id*. at ¶ 20. In fact, members of the Association have expressly committed to trying to change the laws by "participating in litigation to ensure that multi-use bathrooms and locker rooms in school districts remain separated by" sex assigned at birth. *Id*. at ¶ 21.

On April 10, 2026, the Association filed this lawsuit seeking a court order directing the District to change its bathroom policy and to deny transgender students access to bathrooms and locker rooms that align with their gender identity. *Id*. at ¶ 71, Request for Relief ¶ C. The Complaint asserts three claims against the District. Count One alleges the District, through its bathroom policy, violated Title IX by discriminating against female

---

[3] The Complaint specifically states that the Association was formed to "encourage the District to implement a policy that separates bathrooms based on biological sex." Compl. ¶ 20. "Biological Sex" is "a label assigned by a medical professional at birth based on physical characteristics (genitalia) and other biological determinants." Association of Reproductive Medicine, *Just the Facts: Biological Sex*, https://www.asrm.org/advocacy-and-policy/fact-sheets-and-one-pagers/just-the-facts-biological-sex/ (last accessed May 29, 2026). The National Cancer Institute at the National Institutes of Health's NCI Thesaurus uses either the terms "Birth Sex" or "Sex Assigned at Birth" instead of "Biological Sex." *See Sex Assigned at Birth*, NCI Thesaurus, Vers. 26 (2026) ("'Sex Assigned at Birth' means '[t]he male or female designation that doctors ascribe to a newborn infant, usually based on the appearance of the child's external genitalia, and that is marked on their birth records.' The Clinical Data Interchange Standards Consortium ("CDISC") definition included in the NCI Thesaurus advises 'sex assigned at birth is the recommended term.'") The District will consequently be using the term "sex assigned at birth" instead of "biological sex" to describe the Association's request.

students and creating a hostile environment. *Id.* at ¶¶ 63-78. In Count Two, the Association brings a claim under 42 U.S.C. § 1983 alleging the District's bathroom policy has violated female students' right to bodily privacy under the Due Process Clause of the United States Constitution. *Id.* at ¶¶ 79-89. Finally, in Count Three, the Association brings an Equal Protection Clause claim asserting the District's bathroom policy "operates in practice" to effectuate sex discrimination against female students. Id. at ¶¶ 90-98.

Notably, there are no allegations of discrimination, harassment, or hostility by a transgender student against any female student at NRHS or any other school within the District. Despite the claim of invasion of bodily privacy, there are no allegations that female students or transgender students at NRHS or other District schools are required to or have exposed their bodies to other students while using the bathroom. And the Complaint is devoid of any specific allegation that members of the Association have even been in a bathroom at NRHS or another District school at the same time as a transgender student or have actually been required to undress or dress in a locker room with a transgender student present.

The District now brings this Rule 12(b)(6) motion to dismiss in lieu of answering.

## ARGUMENT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed when it fails to state a claim upon which relief can be granted. *See Bonnstetter v. City of Chi.*, 811 F.3d 969 (7th Cir. 2016); *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). To survive a motion to dismiss, a complaint must contain more than mere "labels and conclusions," "naked assertions devoid of further factual

enhancement," or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include sufficient factual allegations to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678.

A complaint meets this standard only if the Court can draw a reasonable inference from the allegations in the complaint that a defendant is liable for the misconduct alleged. *Id*. In determining whether a complaint should be dismissed, the court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). The court need not, however, accord the same deference to a "legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## I.    The District's Bathroom Policy Does Not Violate Title IX.

The first cause of action claims that the District violated Title IX through its bathroom policy, but neither the facts pled nor the law support these claims. Title IX of the Education Amendments Act of 1972 prohibits educational institutions that receive federal financial assistance from engaging in sex-based discrimination. 20 U.S.C. § 1681 (a). In relevant part, the statute provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

7

*Id*. School districts, as recipients of federal funding, are thus prohibited from: (1) providing different aid, benefits, or services; (2) denying aid, benefits, or services; or (3) subjecting any person to separate or different rules, on the basis of sex. 34 C.F.R. § 106.31(b)(2)-(4).

The Complaint alleges that by allowing transgender students to access bathrooms and locker rooms consistent with their gender identity, the District has discriminated against and harassed female students in the District in violation of Title IX. Compl. ¶ 74. But, the Association's allegations and Title IX claim are nothing more than a request for this Court to change the laws and sanction discrimination against transgender students in the District to assuage the feelings of a few students and parents. Title IX does not permit this result and the Association's Title IX claim must be dismissed.

### A.    *The District's Bathroom Policy Does Not Result in Cognizable Sexual Harassment under Title IX.*

When a bathroom and locker room access policy applies equally to all students, it cannot constitute harassment on the basis of sex. Under Title IX, students may bring a claim alleging sexual harassment premised on a hostile environment theory. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (allowing a teacher-on-student sexual harassment claim based on hostile environment); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (allowing a student-on-student sexual harassment claim based on hostile environment). To state a sexual harassment claim under Title IX, a plaintiff must plead facts showing: (1) they were subjected to unwelcome harassment; (2) the harassment was based on sex; (3) the harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to educational opportunities or benefits; and (4) the

school district had actual knowledge of and was deliberately indifferent to the harassment. *Davis,* 526 U.S. at 650; *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731 (7th Cir. 2009); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2009); *see also, Parents for Privacy v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020) (applying *Davis* to a hostile environment claim arising from a school district's policy permitting transgender students to access bathrooms that align with their gender identity); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533-534 (3rd Cir. 2018) (conducting the same *Davis* analysis as the Ninth Circuit in *Parents for Privacy*).

The Association's harassment claim appears to be held up by two pillars. First, that the District's bathroom policy allegedly "punishes" female students by allowing transgender-female students to access female bathrooms and locker rooms. Compl. ¶¶ 73-74. And second, that the bathroom policy has caused female students who are unwilling to use the same bathroom as transgender-female students to wait in lines; experience anxiety and embarrassment; and feel displaced, less safe, and less dignified. Compl. ¶¶ 66, 67, 69. These allegations, however, are insufficient to sustain the Association's Title IX harassment claim.

> 1. *The District's bathroom policy does not subject female students to unwelcome harassment because it applies equally to all students.*

As an initial matter, the District's bathroom policy does not target or punish female students on the basis of their sex as the Association claims. Instead, the policy applies equally to all students in the district by permitting them to use the bathroom or locker room that aligns with their gender identity. Compl. ¶¶ 15, 28, 55. In other words, female students

in the Association may use the bathroom or locker room that is consistent with their gender identity, just as all other students can.

While the Seventh Circuit has yet to rule on this issue, two other appellate courts and one Seventh Circuit district court have determined that bathroom policies that permit students to access the bathroom and locker room that aligns with their gender identity do not involve animus on the basis of sex. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534-35 (3rd Cir. 2018); *Students & Parents for Privacy v. United States Dep't. of Educ.*, No. 16-cv-4945, 2017 U.S. Dist. LEXIS 213091 at *2 (N.D. Ill. Dec. 29, 2017) (adopting the magistrate judge's Report and Recommendation in *Students & Parents for Privacy v. United States Dep't. of Educ.*, No. 16-cv-4945, 2016 U.S. Dist. LEXIS 150011 at *101-02 (N.D. Ill. Oct. 18, 2016)).

The facts in *Students & Parents for Privacy* are closely aligned with the facts here. In that case, the Northern District of Illinois considered whether a school district's policy allowing transgender students to access bathrooms and locker rooms aligned with their gender identity created a hostile environment for female students. 2016 U.S. Dist. LEXIS 150011 at *101-02. In denying the plaintiff organization's request for a preliminary injunction, the court determined that plaintiffs could not demonstrate likely success on the merits of their hostile environment claim. The court found that female students were not "targeted or singled out…on the basis of their sex, nor [were] they being treated any different than boys who attend school within" the district because the policy applied with equal force to all of the district's students. *Students & Parents for Privacy*, 2016 U.S. Dist.

10

LEXIS 150011 at *101. The plaintiffs thus could not establish that the district's bathroom policy constituted harassment on the basis of sex because the policy meant "cisgender boys use the boys' restrooms with transgender boys just like cisgender girls use the girls' restrooms with transgender girls." *Id*.

The Third Circuit in *Doe v. Boyertown Area School District* reached an identical conclusion. 897 F.3d at 534-35. That school district revised its bathroom and locker room policy to allow transgender students to use bathrooms aligned with their gender identity. *Id*. at 524. The Third Circuit, affirming the district court's denial of a preliminary injunction, concluded the plaintiffs could not show that the policy, which allowed "all students to use bathrooms and locker rooms that align with their gender identity," discriminated on the basis of sex because it applied with equal force to all students. *Id*. at 534-35.

Finally, in *Parents for Privacy v. Barr*, the Ninth Circuit determined a school district's policy permitting transgender students to utilize bathrooms and locker rooms that aligned with their gender identity did not create a hostile environment in violation of Title IX. 949 F.3d at 1228. The plaintiffs in *Parents for Privacy*, argued the district's policy constituted harassment on the basis of sex because implementation of the policy required the district to select bathrooms and locker rooms for students based on their gender identity. *Id*. The Ninth Circuit dismissed this argument and reasoned that simply because the policy "accommodate[s] a transgender student's gender identity…[it] does not mean that the Plan harasses other students on the basis of their sex…the Plan does not target students or discriminate against them on the basis of their sex; [it] treats all students—male and

11

female—the same." *Id*. The plaintiffs also argued that the plan harassed "both sexes on the basis of their sex by allowing students assigned the opposite sex at birth to enter privacy facilities." *Id*.  The Ninth Circuit summarily dismissed this argument as well, noting a Title IX sexual harassment hostile environment must fail "where the alleged harassment is inflicted without regard to gender or sex, i.e. where there is no discrimination." *Id*. Therefore, where a bathroom and locker room access policy applies equally to all students, it does not constitute harassment on the basis of sex under Title IX. *Id*.

Here, the Association has failed to allege that the District's bathroom policy treats male and female students differently, as necessary to establish a hostile environment. While the Association claims the District is "punishing the girls…who do not want to share their bathroom and locker room" with transgender students, the Association has not pled any facts that indicate the District's bathroom policy is targeted only at female students. Female students in the Association are permitted to use facilities consistent with their gender identity or use a single-occupant bathroom, just like every other student. The Complaint is devoid of any allegation that the District has or would enforce its bathroom policy differently if a transgender-male student opted to use male bathrooms or locker rooms. And the Complaint contains no allegations reflecting that female students are punished by the District for using any restroom or locker room.

The gravamen of the Association's Complaint, then, is not that its members are being harassed on the basis of *their* sex. Instead, the Association wants the Court to decide that transgender-female students have no right to access female bathrooms or locker rooms because the Association's members do not agree that the transgender-female students are

female.[4] The Association makes no allegation that any student who does not identify as female has used female bathrooms or locker rooms.[5]

But the question of whether transgender-female students are female for the purposes of bathroom and locker room use is not for the Association, the District, or this Court to decide. The Seventh Circuit has expressly held that transgender students have the right to access bathrooms and locker rooms consistent with their gender identity. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017); *A.C. v. Metro Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023). Those decisions are binding upon this Court. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts.") The Association's baseless hostile environment claim that seeks to turn Title IX's antidiscrimination protections into a weapon to deny transgender students equal bathroom and locker room access must be dismissed.

> 2. *Providing students access to bathrooms aligned with their gender identity is neither severe, pervasive, nor objectively offensive conduct and has no effect on female students' access to educational opportunities or benefits.*

---

[4] Should there be any doubt that this is the true issue that rests at center of the Complaint, the Court need look no further than the Association's persistent disregard for the gender-identity of transgender-female students as evidenced by its references to transgender-female students as "males," "biological males," "male student" or "boy" using girls' bathrooms. *See e.g.*, Compl. ¶¶ 1, 16-17, 22, 24, 29, 32, 34, 44, 46, 49, 52-53, 55, 66, 68, 73-74, 78, 86-87, 96-98.

[5] Although the Court must accept the facts pled as true for the purposes of this motion, it is somewhat surprising that Plaintiff can declare with certainty that certain students are "male" or "female" based on knowledge available to it. *See Whitaker*, 858 F.3d at 1053 (observing that a birth certificate may not reflect a student's chromosomal determinants of sex or ambiguous external genitalia).

A student's subjective feelings of discomfort because they might wash their hands or change their clothes next to someone assigned a different sex at birth do not amount to severe, pervasive, or objectively offensive conduct that supports a hostile environment claim under Title IX. Courts have set a high bar for severe, pervasive, and objectively offensive conduct. *See Davis*, 526 U.S. at 653 (holding that a female student was sexually harassed by a male student when, over a period of five months, he engaged in sexually suggestive behavior, including attempts to touch the female student's genital area and making lewd statements); *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014) (holding that a "reasonable jury" could find that a student was subjected to severe harassment that qualified as "objectively offensive" when student was subjected to violent physical attacks that resulted in the student withdrawing from the school district); *Trentadue v. Redmon*, 619 F.3d 648, 653-54 (7th Cir. 2010) (a student's allegations of isolation and mistreatment, including loss of friends, peer-on-peer taunting, and unspecified threats resulting in an arrest, were insufficient to constitute severe, pervasive, and objectively offensive conduct). A plaintiff must plead sufficient facts to suggest the alleged harassment had a "concrete, negative effect" on a female student's education. *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003) (quoting *Davis*, 526 U.S. at 654). A negative impact may be demonstrated by "dropping grades, becoming homebound or hospitalized due to harassment, or physical violence." *Id*. (citations omitted); *see also Trentadue*, 619 F.3d at 654 (concluding student failed to show a concrete negative effect when student's "grades did not suffer, she was not extensively absent from school, she graduated with a class rank of 27 out of over 500 and thereafter enrolled in college.")

14

The Association's claim that the mere presence of a transgender-female student in a female bathroom or locker room is severe, pervasive, and objectively offensive has already been rejected by other courts. In *Parents for Privacy* and *Students & Parents for Privacy*, plaintiffs claimed that the presence of a transgender student in the bathrooms or locker rooms caused students to feel a variety of emotions including embarrassment, anxiety, fear, and loss of dignity. *See Parents for Privacy*, 949 F.3d at 1219; *Students & Parents for Privacy*, 2016 US. Dist. LEXIS 150011 at *18-19. Both courts reasoned that these feelings do not give rise to a hostile environment because they do not allege severe, pervasive, or objectively offensive conduct; they simply allege that certain students are uncomfortable with the ordinary use of facilities by transgender students. *See Parents for Privacy*, 949 F.3d 1229; *Students & Parents for Privacy*, 2016 U.S. Dist. LEXIS 150011 at *104, 113-14; *see also Cruzan v. Special Sch. Dist. #1*, 294 F.3d 981, 984 (8th Cir 2002) (holding a transgender woman's presence in a women's restroom did not constitute actionable sexual harassment of female coworkers). Additionally, in *Students & Parents for Privacy*, the court expressly rejected the plaintiff's argument that avoidance of bathrooms or locker rooms and time spent trying to find a restroom at risk of being tardy deprived any student of access to an education. 2016 U.S. Dist. LEXIS 150011 at *115-16. As the Third Circuit succinctly stated, "an assertion that a cisgender student was harassed merely by a transgender student washing that student's own hands in a bathroom or changing in the locker room…is not the type of conduct that supports a Title IX hostile environment claim." *Boyertown*, 897 F.3d at 536.

15

In support of its hostile environment claim, the Association alleges nearly identical emotional harms that previous courts have rejected. The Complaint states that, because of the bathroom policy, certain female students "experience anxiety related to normal biological needs during the school day, feel displaced from a space that should feel safe and appropriate for girls' use, and feel less safety [and] dignity." Compl. ¶ 66. The Association also asserts female students are "inconvenienced" and "embarrassed" as a result of the policy. *Id*. at ¶ 69. Notably, the Complaint is devoid of any allegation of improper conduct by any transgender student in any bathroom or locker room. The Association's claim is simply that certain female students "feel harassed by the mere presence of a transgender student in locker and bathroom facilities." *Parents for Privacy*, 949 F.3d at 1228-29. Other students' feelings are accommodated by allowing them to use single-occupant restrooms without penalty for being tardy, and these concerns do not meet the high bar to support a hostile environment claim under Title IX.

The Association's claim that S.T. was "bullied" in response to her mother J.T.'s social media post criticizing the District's bathroom policy is similarly insufficient to allege severe, pervasive, or objectively offensive conduct resulting from the policy. Compl. ¶ 57. Courts, including the Seventh Circuit, have routinely rejected Title IX harassment claims where the conduct at issue is bullying, even if the bullying may be connected to an instance of sexual harassment. *See e.g.*, *Trentadue*, 619 F.3d at 653-54. Here, where the Complaint contains only general allegations that S.T. was "criticized" and "threatened" by peers after her mother shared a Facebook post concerning the bathroom policy, there are insufficient factual allegations to support a cognizable allegation of hostile environment harassment.

Compl. ¶ 53. Courts have been clear that, while unfortunate, "mere instances of teasing and name calling- among school children" are not actionable under Title IX.[6] *Davis*, 526 U.S. at 652.

Assuming, *arguendo*, that the conduct the Association alleges would qualify as severe, pervasive or objectively offensive sufficient to prove the first element of the claim, nothing in the Complaint suggests this conduct has resulted in concrete negative effects on female students' education. Like the plaintiffs in *Students & Parents for Privacy*, the Association's primary allegation of its female student members being denied educational access is that they avoid multi-occupant restrooms and are inconvenienced by wait times at single-occupant restrooms. Compl. ¶¶ 67, 69.

Allegations that students have missed class time while waiting for restrooms, struggled to focus in class, or have experienced a disruption of the ability to eat do not rise to the level of concrete negative effects showing a denial of an educational benefit or opportunity. The Seventh Circuit standard for concrete negative effects on education requires more than embarrassment and inconvenience. *See Gabrielle M.*, 315 F.3d at 823 (explaining "dropping grades, becoming homebound or hospitalized due to harassment, or physical violence" are concrete negative effects); *Trentadue*, 619 F.3d at 654 (student failed to show concrete negative effects when she continued to earn high grades and attend

---

[6] The Complaint makes only the conclusory allegations that S.T. experienced "bullying" by being "criticized" and "threatened." *See* Compl. ¶¶ 54, 57-58. Because the Court can only rely on what is pled in the Complaint, any later attempts by Plaintiff to recharacterize the summary claim of "bullying" as specific conduct that would be severe, pervasive, and objectively offensive must be rejected.

school). The Complaint does not include any allegations that female members of the Association have suffered decreases in their grades, missed meaningful amounts of class time that impacted their academic performance, or that disruptions to mealtimes were such that students were not able to participate in mealtimes or school activities. Similarly, there is no allegation that S.T. suffered anything more than discomfort about returning to school as a result of the alleged bullying she experienced related to her mother's conduct. As such, the Complaint fails to plausibly allege that the bathroom policy created a sexually harassing hostile environment that denied female students access to educational opportunities or benefits and Count One must be dismissed.

> 3. *The District neither had notice of, nor acted with deliberate indifference towards, reports of alleged sexual harassment related to the bathroom policy.*

While rife with unsupported legal conclusions that the District's bathroom policy constituted sexual harassment, the Complaint is devoid of any factual allegation that the District had notice or acted with deliberate indifference towards the alleged harassment. This too requires dismissal of the Complaint.

To be held liable for sexual harassment under Title IX, a school district must have actual knowledge of the harassment. *Davis*, 526 U.S. at 646-47; *Gabrielle M.*, 315 F.3d at 823. To plausibly allege a school district had actual knowledge of harassment, the plaintiff must allege sufficient facts indicating the district received reports or observed inappropriate behavior. *Gabrielle M.*, 315 F.3d at 823. If a district has actual knowledge of harassment, it will not be liable so long as its response to the harassment was not "clearly unreasonable." *Id*. at 824; *Davis*, 526 U.S. at 648-649.

Here, there are no allegations in the Complaint suggesting the District had actual knowledge of any harassment against student members of the Association or acted with deliberate indifference upon obtaining such knowledge. Moreover, the Complaint never alleges that parents or students reported specific conduct that would amount to sexual harassment. Instead, members of the Association merely sought information regarding the District's bathroom policy and raised concerns regarding the policy. *See* Compl. ¶¶ 27-30, 37, 52-56. The District thus had no occasion to take action on any allegation of harassment because it was never reported. As such, the Association's hostile environment claim must be dismissed.

## B.     *The District's Bathroom Policy Does Not Result in a Cognizable Sex Discrimination Claim Under Title IX.*

In addition to its sexual harassment claim, Count One also alleges a sex discrimination claim under Title IX. Compl. ¶¶ 73-74. As with its sexual harassment claim, the Association asks this Court to determine that the District's bathroom policy treats female students differently based on their sex and thus discriminates against them. Neither the law nor the facts alleged support this position.

To state a claim for sex discrimination under Title IX, a plaintiff must allege "(1) the educational institution received federal funding, (2) [the] plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution discriminated against plaintiff based on" sex. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019); *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019). For discrimination to be based on sex, a plaintiff must allege sufficient facts indicating that

the educational institution subjected them to different treatment based on their sex. *See Purdue*, 928 F.3d at 669 (noting "to state a claim, [plaintiff] must allege facts raising the inference that [school] acted as least partly on the basis of sex in his particular case."); *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 579, 583 (7th Cir. 2014). Discrimination must be intentional. *Hayden*, 743 F.3d at 583. Courts have held that a plaintiff is excluded from participation in or denied the benefits of an educational program if they are suspended or expelled, not allowed to participate in a program or activity, or entirely denied access to a school-owned facility, such as a bathroom. *See Columbia Coll. Chicago*, 933 F.3d at 853-54; *Hayden*, 743 F.3d at 573, 583; *Whitaker,* 858 F.3d at 1049-50.

The District's bathroom policy does not subject female students to differential treatment based on sex. Instead, the policy permits all students to use a bathroom or locker room consistent with their gender identity. Members of the Association are permitted to use a multi-occupant bathroom or locker room consistent with their gender identity, just like every other student. If they do not want to use a multi-occupant bathroom or locker room, female student members of the Association may use a single-occupant bathroom, just like every other student. Male students are subject to the same policy.

Nor does the Complaint plausibly state female students are subject to differential discipline on the basis of their sex due to bathroom or locker room use; instead, the Complaint confirms that students who are late to class because they were accessing a single occupant bathroom will be excused from receiving a disciplinary tardy, regardless of the

20

student's sex. Compl. ¶ 56. In short, the Complaint is devoid of any fact suggesting the bathroom policy is motivated by sex-based animus.

Similarly, the Association fails to plausibly allege female students have been excluded from participating in or denied the benefits of an educational program. In *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, the Seventh Circuit considered whether a transgender-male student could show a likelihood of success on the merits of a Title IX discrimination claim arising out of a school district's policy requiring a transgender student to either use the bathroom aligned with his sex assigned at birth or the gender-neutral bathrooms. 858 F.3d at 1041. That court held the student could likely prevail on the merits of his Title IX discrimination claim because he could show that the District denied him access to a bathroom *solely* because of his sex, specifically his gender identity that was not the same as his sex assigned at birth. *Id*. at 1049-1050; *see also Martinsville*, 75 F.4th at 772 (reaching the same conclusion with respect to bathrooms and locker rooms).

While the Complaint here uses similar language to that used in *Whitaker*, the facts alleged do not support a comparable outcome. Unlike the *Whitaker* plaintiff, female students in the District are not denied the benefit of accessing bathrooms that align with their gender identity. Instead, the District's policy permits *all* students to use bathrooms and locker rooms based on their gender identities. This basic, yet fundamental, difference between the District's bathroom policy and the policy in *Whitaker* proves fatal to the Association's claims. The *Whitaker* plaintiff was given the false choice between using a multi-occupant restroom that contradicted his gender identity or being the only student to

21

use a single-occupant restroom, which isolated him and highlighted that he was transgender. 858 F.3d at 1045. Here, all male and female students have the same options: they may use a multi-occupant restroom or locker room that aligns with their gender identity or a single-occupant restroom. Students are not denied the benefits of the District's educational program in any way.

### C.    *Adopting a Policy that Restricts Bathroom Access Based on Sex Assigned at Birth Would Violate Title IX and Binding Seventh Circuit Precedent.*

The Association further contends in Count One that the District could remedy the alleged harassment against female students "by adopting a policy of sex-segregated bathrooms and locker rooms." Compl. ¶ 71. But, instead of remedying non-existent sex discrimination, amending the bathroom policy as suggested would actually result in sex discrimination under Title IX. *See Whitaker* at 1050; *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 593-94 (4th Cir. 2020).

As a matter of law, the District cannot adopt a policy segregating its bathrooms and locker rooms on the basis of sex assigned at birth because such a policy would violate Title IX under the precedential decisions in *Whitaker* and *Martinsville*. Interpretation of a statute by a federal circuit court of appeals is binding precedent in that circuit, unless there is a directly contrary United States Supreme Court decision. *See Wilson v. Cook Cty.*, 937 F.3d 1028, 1035 (7th Cir. 2019) (quoting *McClain v. Retail Food Emplrs. Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005)); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). Wisconsin law further restricts school boards from taking action "prohibited by the

laws of the federal government." Wis. Stat. § 118.001; *see also Johnson v. Burmaster*, 744 N.W.2d 900, 904 n. 3 (Wis. App. 2007) (school district duties and powers "require broad construction… [but] a school board's discretion remains limited to acts not contrary to state or federal law.").

In *Whitaker*, the school district prohibited the transgender-male student from using male bathrooms and required the student to either use the female restrooms or use a single-occupant, gender-neutral restroom. 858 F.3d at 1041. The Seventh Circuit affirmed the district court's decision granting a preliminary injunction requiring the school district to permit the student to utilize the designated male restrooms. *Id*. at 1055. Title IX's prohibition on sex discrimination protects transgender students because sex discrimination includes discrimination based upon an individual not conforming "to the sex-based stereotypes that he or she was assigned at birth." *Id*. at 1048. And in the student's case, he could likely show that the school district's policy requiring an individual to use a restroom not in conformity with his gender "punishes that individual for his or her gender non-conformance" in violation of Title IX. *Id*. The Seventh Circuit further held that offering only the alternative gender-neutral bathrooms likely violated Title IX because it did not offer the student a true alternative to the male restrooms and still subjected him to "different rules, sanctions, and treatment than non-transgender students." *Id*. at 1049-1050.

The Seventh Circuit reaffirmed that Title IX requires school districts to provide students with access to bathrooms and locker rooms that align with their gender identity in *A.C. v. Metropolitan School District of Martinsville*, 75 F. 4th 760, 764 (7th Cir. 2023). In *Martinsville*, two Indiana school districts denied transgender-male students access to male

bathrooms and locker rooms. *Id*. at 764-66. Pointing to its ruling in *Whitaker*, the Seventh Circuit reaffirmed that "discrimination against transgender persons is sex discrimination for Title IX purposes." *Id*. at 769. The court reasoned the transgender-male students could show a likelihood of success on the merits of a Title IX discrimination claim because providing *only* the "gender-neutral" alternative was not a true alternative to male restrooms and because they were subjected to worse treatment solely because of their gender identities. *Id* at 772.

Here, adoption of a policy segregating the District's bathrooms and locker rooms based on sex assigned at birth would require transgender students to use bathrooms and locker rooms that do not conform with their gender identity. The District, bound by the Seventh Circuit's precedents, is required to implement its current bathroom policy. This Court is similarly bound to follow the Seventh Circuit's decisions in *Whitaker* and *Martinsville*. *Reiser*, 380 F.3d at 1029.

In apparent support of its allegation that the District could adopt a policy segregating bathrooms based on sex assigned at birth, the Association ignores precedential caselaw and instead cites to Title IX's implementing regulations at 34 C.F.R. § 106.33. *See* Compl. ¶ 72. The regulation states schools "may provide separate toilet, locker room, and shower facilities on the basis of sex…." 34 C.F.R. § 106.33. But other courts have rejected this same argument because the regulation does not "explicitly state, or even suggest, that schools may not allow transgender students to use the facilities that are most consistent with their gender identity." *Parents for Privacy*, 949 F.3d at 1127; *see also Martinsville*, 75 F.4th at 769-770; *Boyertown*, 897 F.3d at 533; *Parents for Privacy*, 949 F.3d at 1227;

*Grimm*, 972 F.3d at 618. And the District remains bound by *Whitaker* and *Martinsville* to ensure equal access to restrooms and locker rooms based on students' gender identity in order to comply with Title IX as interpreted by the Seventh Circuit.

Despite the Association's assertion to the contrary, the District cannot legally implement a bathroom policy that segregates access based on sex assigned at birth. The District is bound to follow the law. And this is a rare case where there can be no genuine dispute about what the law says: in the Seventh Circuit, Title IX prohibits school districts from denying transgender students access to bathrooms and locker rooms consistent with their gender identities by segregating school facilities based on sex assigned at birth.

## II.     The Bathroom Policy Does Not Violate Female Student's Right to Privacy.

The Association claims in Count Two of the Complaint that the District's bathroom policy "infringes upon the fundamental bodily privacy of student members of the Association." Compl. ¶ 88. But this misstates the law and asserts a right under the Due Process Clause that has not been previously recognized: a right for students to use bathrooms and locker rooms segregated by sex assigned at birth. This count must also be dismissed.

To plausibly state a violation of a right protected by the Fourteenth Amendment's substantive Due Process Clause under 42 U.S.C § 1983, the complaint must contain sufficient facts alleging: (1) conduct under color of state law by a state official; (2) that conduct violated a fundamental right or liberty; and (3) the conduct was so arbitrary and irrational as to shock the conscience. *Robbin v. City of Berwin*, 108 F.4th 586, 589 (7th Cir. 2024). A fundamental right is one which is "deeply rooted in this Nation's history and

tradition, and implicit in the concept of ordered liberty such that neither liberty or justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *Robbin*, 108 F.4th at 590. When evaluating whether a fundamental right was violated, Courts must take care to ensure "the liberty protected by the Due Process Clause [not] be subtly transformed into the policy preferences" of judges. *Glucksberg*, 521 U.S. at 720 (quoted by *Hayden*, 743 F.3d at 575).

While the right to privacy "is now firmly ensconced among the individual liberties protected by our Constitution," a right to bodily privacy under the Due Process Clause has been principally recognized in cases involving conduct by law enforcement that impacted either private citizens or prisoners. *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir 1994). For example, in *Canedy,* the Seventh Circuit considered whether regular strip searches and observations of male prisoners by female guards in private settings where they "dress, shower, defecate, and sleep in various states of undress" violated a male prisoner's privacy rights. *Id*. at 184. While the Seventh Circuit ultimately declined to define the exact scope of a prisoner's privacy rights, the Court suggested a prisoner's privacy rights are violated where observations of a prisoner's body are "intrusive or a regular occurrence." *Id*. at 187-88. In *Poe v. Leonard*, the Second Circuit held individuals have a right to privacy in their unclothed or partially unclothed body in the context of a civilian being filmed while in a state of undress by a law enforcement officer. 282 F.3d 123, 129 (2d Cir. 2002). And while the Ninth Circuit recognized a right to bodily privacy in *York v. Story*, it did so in the context of a law enforcement officer taking nude photos of a crime victim over her objection and then sharing them with other officers. 324 F.2d 450, 452, 455-56 (9th Cir. 1963).

26

These cases all involve situations in which a state actor either viewed a prisoner or a member of the public in a state of undress. There is no allegation in the Complaint that the District's bathroom policy requires or permits school officials to view students' unclothed or partially unclothed bodies, let alone a specific allegation that any such observation occurred.

Only two appellate courts have even suggested that there may be a right to bodily privacy in cases involving schools. In *Boyertown*, the Third Circuit held that there is "a constitutionally protected privacy interest" in an individual's "partially clothed body." 897 F.3d at 527; *see also Doe v. Luzerne Cnty.*, 660 F.3d 169 (3rd Cir. 2011). However, the Third Circuit ultimately concluded that the school district's policy allowing transgender students to access facilities consistent with their gender identity did not violate the right to privacy because the district's policy served the compelling state interest of avoiding discrimination against transgender students and benefitted all students by promoting acceptance. *Id*. at 528-29. By contrast, the Eleventh Circuit, in *Adams v. School Board of St. Johns County*, suggested students have a right to privacy in school that would justify a school district's policy of bathrooms segregated based on sex assigned at birth. 57 F.4th 791, 796, 804 (11th Cir. 2022). However, while the Eleventh Circuit asserted that privacy in bathrooms was a right widely recognized in jurisprudence and history, it cited no legal precedent supporting that position. *See id*. at 805. Neither the U.S. Supreme Court nor the Seventh Circuit has determined that such a right exists.

Unlike *Adams*, here the Association frames the fundamental right violated by the District's bathroom policy as the right of students to be free from "exposure of their bodies

and intimate activities to a person of the opposite sex." Courts have routinely dismissed this variation of the right to privacy as not protected by the Due Process Clause.

In *Parents for Privacy*, the plaintiffs, like the Association, argued the Due Process Clause encompassed a "fundamental right to bodily privacy that includes 'a right to privacy of one's fully or partially unclothed body and right to be free from state-compelled risk of intimate exposure of oneself to the opposite sex.'" *Parents for Privacy*, 949 F.3d at 1222. The Ninth Circuit dismissed the existence of such a right, reasoning that there was no legal basis for recognizing such a broad privacy right where recognition of the right was principally confined to cases involving conduct by law enforcement and did not recognize a general right to be free from privacy intrusions. *See id*. at 1224-26.

Despite recognizing a right to privacy that could apply in schools, the Third Circuit in *Boyertown* also dismissed a formulation of the right to privacy that would protect against "the risk of unconsented intimate exposure to the opposite sex" in bathroom and locker room facilities. *Boyertown*, 897 F.3d at 531. This asserted privacy right amounted to an argument that the right to privacy barred sex-segregated bathrooms from being shared with transgender students. *Id*. The Third Circuit refused to recognize such a right reasoning that it was not supported by law because, ultimately, school bathrooms and locker rooms are "just not that private." *Id*. at 531-32 (*citing Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) ("[p]ublic school locker rooms . . . are not notable for the privacy they afford.")).

There is no legal support for the Association's assertion of a broad right to privacy. To the extent the Association attempts to rely on *Boyertown*'s general recognition of a right

28

to privacy from exposure of one's unclothed body, such reliance is misplaced because the court "decline[d] to recognize" a right to privacy "that would be violated by the presence of students who do not share the same birth sex." *Id*. at 531.

Moreover, the Association's framing of student privacy rights amounts to an assertion that students have the right to use a sex-segregated bathroom or locker room without the risk that a transgender student may be in a locked adjacent stall or performing a non-intimate act like washing their hands in a common area. Bathrooms and locker rooms, after all, are spaces where students will at some point inevitably attend to "personal biological or hygienic needs" while sharing the space with their peers. *Id*. Although it was considering an equal protection claim rather than due process, the Seventh Circuit observed in *Whitaker* that:

> A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing their bodily functions. Or for that matter, any other student who uses the bathroom at the same time.

858 F.3d at 1052.

Even assuming students did have the broad right to privacy the Association alleges, the District's bathroom policy does not infringe on that right. In *Martinsville*, the Seventh Circuit specifically held that "[g]ender-affirming facility access does not implicate the interest in preventing bodily exposure, because there is no such exposure." 75 F.4th at 773; *see also Boyertown*, 897 F.3d at 532-33; *Parents for Privacy*, 949 F.3d at 1225. Moreover, any such right is not implicated because "[c]ommon sense tells us that the communal

restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Whitaker*, 858 F.3d at 1052. This is particularly true where, as is the case here, students have the option to use a single-occupant bathroom if they desire additional privacy. *See Student & Parents for Privacy*, 2016 U.S. Dist. LEXIS 150011 at \*95 (finding that the district negated any claim of infringement by offering students access to single-occupancy bathrooms).

Simply put, nothing in the complaint supports an allegation that students are being denied a fundamental privacy right. With no cognizable violation having been pled, the right to privacy claim in Count Two must be dismissed.

## III. The Bathroom Policy Does Not Violate the Equal Protection Clause's Prohibition on Sex Discrimination.

Finally, in Count Three, the Association alleges the District's bathroom policy violates the Equal Protection Clause's prohibition on sex discrimination. *See* Compl. ¶¶ 92, 95. The Association claims the policy discriminates based on sex because it "operates in practice to burden only female students" because the Complaint only alleges transgender-female students have used female bathrooms. Compl. ¶ 97. Although the Association points to the policy's effects as evidence of sex-based discrimination, the policy is facially neutral and applies equally to all students, regardless of sex or gender identity. As a result, Count Three must be dismissed.

To plausibly allege sex discrimination under the Equal Protection Clause, the complaint must contain sufficient facts suggesting: (1) the defendant acted with discriminatory intent and (2) the defendant discriminated against the plaintiff because of

the plaintiff's sex. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). When a plaintiff alleges that a policy has resulted in sex discrimination under the Equal Protection Clause, the court examines the policy itself. *See Hayden*, 743 F.3d at 579. A complaint plausibly alleges a policy discriminates on the basis of sex when the policy imposes a requirement on the plaintiff that it does not impose on the opposite sex by drawing an explicit gender line. *Id*.

In *Hayden*, the Seventh Circuit examined an Equal Protection Clause sex discrimination claim arising out of a school district's implementation of an unwritten hair length policy that only applied to its boys' basketball teams. *Id*. at 572. The Seventh Circuit reasoned that the plaintiff had succeeded in showing that the hair length policy constituted sex discrimination because the policy drew an "explicit distinction between male and female athletes" and imposed a burden on only male athletes because the policy, on its face, only required male basketball players to cut their hair to the specified length without any hair-length requirements for female basketball players. *Id*. at 579, 582.

In *Whitaker*, the Seventh Circuit also considered whether the plaintiff was likely to succeed in making a *prima facie* showing that the school district's bathroom policy amounted to sex discrimination under the Equal Protection clause. 858 F.3d at 1051. The Seventh Circuit held that the transgender student likely could succeed in showing the bathroom policy discriminated against the student based on his sex. The court reasoned that the policy was "inherently based upon a sex-based classification" because it could not "be stated without referencing sex, as the School District decides which bathroom a student may use based upon the sex listed on the student's birth certificate." *Id*.

31

The Fourth Circuit has also held that a school district's bathroom policy restricting access based on biological sex supports a claim for sex discrimination under the Equal Protection Clause. In *Grimm v. Gloucester County School Board*, the school district enacted a bathroom policy stating "[i]t shall be the practice of [the District] to provide male and female restroom and locker room facilities in its schools, and the use of said facilities shall be limited to the corresponding biological genders, and students with gender identity issues shall be provided an alternative appropriate private facility." 972 F.3d at 599-600; cert denied 141 S.Ct. 2878 (2021). As in *Whitaker*, the school district claimed its policy did not discriminate on the basis of sex since "all students [were] treated the same…because the policy applies to everyone equally." *Id*. at 609. The Fourth Circuit rejected this argument, however, noting that the policy discriminated on the basis of sex because it explicitly required transgender students to use single-occupant restrooms and required the school district to identify students' "biological gender." *Id*.

The policy at issue in this case contains none of the discriminatory language or intent at issue in *Hayden*, *Whitaker*, or *Grimm*. The District's bathroom policy provides that all students may use bathrooms based on their gender identity. Compl. ¶ 15. Unlike the policies at issue in *Grimm* and *Hayden*, it does not include any explicit reference to sex or draw a specific distinction between the sexes. Moreover, unlike the policies in both *Whitaker* and *Grimm*, it does not allow the *District* to decide which bathroom a student must use based on the District's own determination of "biological sex." Instead, under the District's bathroom policy, students and parents can decide what bathroom they are most comfortable using rather than having the District dictate their gender identity. *See* Compl. ¶ 56. The fact

32

that all students have this option is a critical distinction that differentiates the District's policy from those that have been held to violate the Equal Protection Clause.

While the Association claims that its female student members are embarrassed by their decision to use single-occupant restrooms, the Association cannot deny that all students have the same choice to access multi-occupant bathrooms consistent with their gender identities or single-occupant bathrooms with no sex designation. As such, the Association has failed to allege that the District's policy facially discriminates against female students, or any student for that matter, based on their sex.

Where a policy does not facially discriminate on the basis of a sex, a plaintiff may nevertheless withstand a motion to dismiss if they can plausibly allege "the adverse effect [of the policy] reflects invidious gender-based discrimination." *Pers. Adm'r. of Mass. v. Feeney*, 442 U.S. 256, 274 (1979). A plaintiff must allege sufficient facts indicating the purpose of the challenged policy reflects a sex-based animus. *See id.* at 275 (holding no gender-based discrimination where statute distinguished between veterans and nonveterans, rather than between men and women); *Frock v. United States R. Retirement Bd.*, 685 F.2d 1041, 1049 (7th Cir. 1982) (holding legislation that prohibited both men and women from receiving dual benefits was not invidious discrimination). The Association has failed to do so.

In *Personnel Administrator of Massachusetts v. Feeney*, a female employee of the State of Massachusetts brought suit under the Equal Protection Clause claiming that Massachusetts's veterans' preference statute discriminated against women because the preference "operate[d] overwhelmingly to the advantage of males" and "exclude[d] women

33

from consideration of the best Massachusetts civil service jobs." 442 U.S. at 259. The Supreme Court held the veterans' preference statute did not violate the Equal Protection Clause because the employee could not show "the law in any way reflects a purpose to discriminate on the basis of sex." *Id*. at 281. The Supreme Court found that the history of Massachusetts veterans' preference statute showed that the preference was offered equally to male and female veterans. *Id*. at 279-280. Thus, the Supreme Court reasoned the employee could not show the purpose of the veterans' preference statute reflected sex-based animus because the statute was "a preference for veterans of either sex over nonveterans of either sex, not for men over women." *Id*. at 280.

A similar fatal flaw is present here. While the Association alleges the bathroom policy "operates in practice to burden only female students" because there is not a transgender-male student accessing male-designated bathrooms, the Association makes no claim this was the District's *intent* in enacting the bathroom policy and not merely a byproduct of the alleged circumstances at NRHS. The Complaint specifically alleged the District's bathroom policy allows *all* students to use bathrooms consistent with their gender identity. Compl. ¶ 15. A statement by the District's Superintendent stating "It is [S.T.'s, one of the Association's members] choice about which bathrooms she would feel more comfortable using" further supports that the purpose of the policy is not to discriminate based on sex but instead to allow all students, including the Association's members, to make a personal choice about which bathroom to use. Compl. ¶ 56. The District's bathroom policy does not make distinctions based on sex, which forecloses the viability of the Association's Equal Protection Claim. Count Three must also be dismissed.

## CONCLUSION

The Association asks this Court to create new law to insulate its members from the feelings of discomfort they have with respect to transgender students having access to multi-user bathrooms, and they weaponize Title IX in order to discriminate against transgender students.  Under the law, neither is permitted. For all the foregoing reasons, the District requests this Court dismiss the Association's claims in their entirety and with prejudice.

Dated: June 12, 2026

**SQUIRES, WALDSPURGER & MACE, P.A.**

By: */s/ Trevor S. Helmers*
Trevor S. Helmers, Atty. No. 1096386
Elizabeth J. Vieira, Atty. No. 1137795
Theo M. Britton, MN Atty. No. 506743
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
trevor.helmers@raswlaw.com
liz.vieira@raswlaw.com
theo.britton@raswlaw.com

**ATTORNEYS FOR DEFENDANTS**