**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

NEW RICHMOND PARENTS FOR STRONG
SCHOOLS, UA.,

      Plaintiff,

    v.                                     Case No. 3:26-cv-316

SCHOOL DISTRICT OF NEW RICHMOND
BOARD OF EDUCATION,

      Defendant.

---

### *AMICUS CURIAE* BRIEF OF
### GAY STRAIGHT ALLIANCE FOR SAFE SCHOOLS, INC. ("GSAFE")
### IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

Jade Hall
WI State Bar No. 1105384
Ryan V. Cox
WI State Bar No. 1140899
AMERICAN CIVIL LIBERTIES UNION
OF WISCONSIN FOUNDATION, INC.
207 E. Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
*Counsel for Amicus Curiae*

**Table of Contents**

INTEREST OF AMICUS CURIAE ............................................................................... 5

INTRODUCTION ...................................................................................................... 6

ARGUMENT .............................................................................................................. 6

I.    GRANTING PLAINTIFF'S REQUESTED RELIEF WOULD IMPEDE THE

CREATION OF SCHOOL COMMUNITIES WHERE ALL LGBTQ+ STUDENTS CAN

THRIVE. ..................................................................................................................... 6

A.    *GSAFE's work with Wisconsin schools and students demonstrates how an*

*unsupportive learning environment can cause harm for Wisconsin students.*........................ 7

B.    *Policies respectful of every student's gender identity minimize disruptions and help*

*create a safe, welcoming, and productive learning environment for all.* ............................... 8

C.    *Transgender students suffer social, mental, and physical health consequences when not*

*permitted to use the bathroom aligned with their gender identity.*........................................ 10

II.   FORCING NEW RICHMOND STUDENTS TO USE BATHROOMS THAT ALIGN

WITH THEIR BIOLOGICAL SEX WILL ESCALATE HOSTILITIES TOWARD LGBTQ+

STUDENTS AND EMBOLDEN A CLIMATE OF INTOLERANCE.................................... 12

III.  THE SUPREME COURT'S DECISION IN THE *B.P.J* CASE DOES NOT APPLY TO

THE COURT'S DECISION IN THIS CASE.......................................................................... 14

CONCLUSION............................................................................................................... 16

**Table of Authorities**

CASES

*A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th (7th Cir. 2023) ---------------------------------10

*Bostock v. Clayton Cnty.*, 590 U.S. (2020)----------------------------------------------------------15

*Turner Broad. Sys. v. FCC*, 520 U.S. (1997) ------------------------------------------------------16

*West Virginia v. B.P.J.*, No. 24–38, slip op. (U.S. June 30, 2026)------------------------------------14

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d (7th Cir. 2017)------------10

OTHER AUTHORITIES

Amira Hasenbush, Andrew R. Flores & Jody L. Herman, *Gender Identity Nondiscrimination Laws in Public Accommodations: a Review of Evidence Regarding Safety and Privacy in Public Restrooms, Locker Rooms, and Changing Rooms*, 16 SEXUALITY RSCH. AND SOC. POL'Y (2019) ------------------------------------------------------------------------------------------- 9

CONSERVATIVE PATRIOT LENS, *2-10-2026 New Richmond, WI schoolboard meeting(Public Comments)* [sic] (YouTube, Feb. 11, 2026), https://www.youtube.com/watch?v=Uk1x3cHwLDE ------------------------------------------------- 7

Gabriel R. Murchison et al., *School Restroom and Locker Room Restrictions and Sexual Assault Risk Among Transgender Youth*, 143(6) PEDIATRICS 5 (2019) -----------------------------------12

Henry F. Fradella & Alexis Rowland, *Baseless Anti-trans Claims Fuel Adoption of Harmful Laws – Two Criminologists Explain*, THE CONVERSATION (June 5, 2023, at 08:07 ET), https://theconversation.com/baseless-anti-trans-claims-fuel-adoption-of-harmful-laws-two-criminologists-explain-206570 [https://perma.cc/DUP8-5E43]-----------------------------------10

Jonah P. DeChants et al., *Transgender and Nonbinary Young People's Bathroom Avoidance and Mental Health*, 2 INT'L J. TRANSGENDER HEALTH (2025) -------------------------------------12

Kristie L. Seelman, *Transgender Adults' Access to College Bathrooms and Housing and the Relationship to Suicidality*, 63 J. HOMOSEXUALITY (2016) ---------------------------------------11

Lance S. Weinhardt et al., *Transgender and Gender Nonconforming Youths' Public Facilities Use and Psychological Well-Being: A Mixed-Method Study*, 2 TRANSGENDER HEALTH (2017)8

Lauren Januszewski, FACEBOOK (Feb. 3, 2026 at 18:44), https://www.facebook.com/groups/711829470114058/posts/1551642339466096/ [https://perma.cc/9TTG-YBD9] -----------------------------------------------------------------13

Student A, FACEBOOK (Feb. 4, 2026, at 06:29), https://www.facebook.com/█████████2010/posts/766686879850786 [https://perma.cc/9JMU-UT53] -----------------------------------------------------------------------------------13

**INTEREST OF AMICUS CURIAE**

**Gay Straight Alliance for Safe Schools, Inc. ("GSAFE")** is a Madison, Wisconsin-based nonprofit organization dedicated to creating safe, inclusive, and supportive school environments for LGBTQ+ youth across the state. For nearly 30 years, GSAFE has worked to achieve this goal by developing the leadership skills of LGBTQ+ youth, supporting Gay-Straight Alliances, training educators, and advancing educational justice. The issues involved in this case directly impact GSAFE's work and are within the organization's expertise. The American Civil Liberties Union of Wisconsin Foundation files this brief on GSAFE's behalf.

**INTRODUCTION**

When New Richmond School District ("the District") stood their ground against baseless attempts to deny transgender students' equal bathroom and locker room access, they were acting in the best interest of the school's community as a whole and in accordance with settled law. GSAFE writes to warn of the harm caused by restrictive bathroom policies, to explain why Plaintiff's requested relief would run contrary to the Seventh Circuit's prior holdings, and to explain why dismissal of this case is proper.

GSAFE submits that granting Plaintiff's requested relief would undermine the educational interests of transgender students, harm school communities, and ultimately frustrate the ability of all LGBTQ+ youth to learn in a safe and supportive environment. Drawing on decades of experience, GSAFE has found that policies allowing transgender students to use facilities consistent with their gender identity foster student well-being, reduce stigma, and promote full participation in school life. The evidence shows that such policies do not compromise the privacy or safety of other students. Meanwhile, restrictions on bathroom access can inflict and legitimize significant social, psychological, and physical harms on transgender youth across the state. The balance of harms, therefore, strongly favors maintaining policies that respect transgender students' gender identities and preserve their equal access to educational opportunities.

**ARGUMENT**

I.  **GRANTING PLAINTIFF'S REQUESTED RELIEF WOULD IMPEDE THE CREATION OF SCHOOL COMMUNITIES WHERE ALL LGBTQ+ STUDENTS CAN THRIVE.**

As a Wisconsin-based educational justice organization that has worked with LGBTQ+ youth, educators, families, and school communities for more than three decades, *Amicus Curiae*

6

"GSAFE" has extensive experience supporting schools in developing and implementing policies that ensure all students can learn in safe, inclusive, and affirming environments. GSAFE's mission is to create safe schools for LGBTQ+ youth by developing youth leadership, supporting student organizations, training educators, and advancing educational justice throughout Wisconsin. Through its work with hundreds of schools and student groups, GSAFE has observed that policies respecting transgender students' gender identities are essential to creating educational environments in which all students can fully participate and thrive.

### A. GSAFE's work with Wisconsin schools and students demonstrates how an unsupportive learning environment can cause harm for Wisconsin students.

Should this case proceed, school districts' efforts to maintain inclusive environments for LGBTQ+ students will begin to deteriorate for fear that they too will be subject to litigation. GSAFE has experienced this firsthand in various school districts. Many districts, including New Richmond, have developed formal or informal policies allowing bathroom usage based on gender identity. Their goal in doing so is to ensure a learning environment where students are confident in who they are and feel supported. GSAFE has witnessed a shift in school administrations' attitudes and priorities when inclusive policies are legally challenged. Specifically, schools tend to become more concerned with keeping the status quo, rather than improving the learning environment within the district.

More concerning, students who identify as transgender begin to withdraw and feel undeserving to be seen, believing that they have no place to belong at school.[1] Students who are most affected by exclusive policies, or efforts to promote or adopt them, stop engaging in school

---

[1] *See* CONSERVATIVE PATRIOT LENS, *2-10-2026 New Richmond, WI schoolboard meeting(Public Comments)* [sic], at 32:50-33:46(YouTube, Feb. 11, 2026), https://www.youtube.com/watch?v=Uk1x3cHwLDE.

activities and stop speaking up for themselves when they encounter bullying or violence. In essence, for at least eight hours of their day, transgender students begin to internalize the idea that they have to hide who they are to survive.  This is further supported by the research and student statements cited below. GSAFE's experiences with the Wisconsin students, staff, and district administration, even if anecdotal, point to the devastating ramifications for learning environments in New Richmond and beyond if the Court allows this suit to progress.

**B. Policies respectful of every student's gender identity minimize disruptions and help create a safe, welcoming, and productive learning environment for all.**

GSAFE's experience consistently demonstrates that inclusive policies allowing transgender students to access school facilities consistent with their gender identity promote student well-being, reduce stigma, and support educational engagement.[2] When schools recognize and respect a student's gender identity, they remove unnecessary barriers to participation in everyday school life and foster a climate of belonging for all students. Inclusive policies help prevent the isolation, exclusion, and discrimination that transgender students frequently experience when they are singled out for differential treatment. In contrast, policies that deny recognition of a student's gender identity communicate that the student is unwelcome or unworthy of equal treatment, undermining both student well-being and educational opportunity.

While schools must be responsive to the concerns of all students and families, concerns purely about discomfort do not justify denying transgender students' equal access to educational opportunities and school facilities. Educational institutions routinely help students navigate

---

[2] *See* Lance S. Weinhardt et al., *Transgender and Gender Nonconforming Youths' Public Facilities Use and Psychological Well-Being: A Mixed-Method Study*, 2 TRANSGENDER HEALTH 140, 149 (2017) (finding that schools allowing transgender and non-binary students the freedom and agency to choose their bathrooms see positive outcomes for those students).

differences among their peers. Schools cannot exclude students because others are unfamiliar with their beliefs, backgrounds, or identities, hold misconceptions about them, or express discomfort with their presence. Rather, schools must educate students, foster mutual respect, and create environments in which all young people can participate safely and equally. These same duties must apply to transgender students. When concerns arise regarding restroom or locker room use, schools can address those concerns, as the District has here, through education, clear expectations regarding respectful behavior, and accommodations available to any student seeking additional privacy—without singling out or burdening transgender students. GSAFE's work with educators over multiple decades demonstrate that affirming transgender students and respecting the privacy of all students are not competing objectives.

Transgender students' access to facilities consistent with their gender identity does not harm other students. Opponents of inclusive school policies often express concerns that allowing transgender students to use bathrooms or locker rooms aligned with their gender identity will compromise the privacy or safety of other students. However, empirical research fails to support those concerns. A study of localities in Massachusetts compared rates of violent stranger victimization in public restrooms, locker rooms, and dressing rooms between localities with nondiscrimination laws that protect transgender people's access to these facilities and those without.[3] The study found that incidents of safety and privacy violations in these spaces were generally rare, and that there was no evidence that violations in public restrooms changed as a result of transgender people having legally mandated access to restrooms consistent with their

---

[3] Amira Hasenbush, Andrew R. Flores & Jody L. Herman, *Gender Identity Nondiscrimination Laws in Public Accommodations: a Review of Evidence Regarding Safety and Privacy in Public Restrooms, Locker Rooms, and Changing Rooms*, 16 SEXUALITY RSCH. AND SOC. POL'Y 70, 78 (2019).

gender identity.[4] These results were replicated in a similar nationwide study comparing states and municipalities with antidiscrimination laws against those without.[5]

The Seventh Circuit has likewise recognized that transgender students do not pose a unique threat to the privacy interests of their peers. *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1052 (7th Cir. 2017) ("A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of [a] . . . student of the same biological sex . . . ."); *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 773 (7th Cir. 2023) (questioning how a transgender student's "presence behind the door of a bathroom stall threatens student privacy"). Concerns that transgender students pose a threat to other students in restrooms are often based on antiquated and inaccurate assumptions that conflate a student's transgender identity with inappropriate conduct.[6] Like all students, transgender students are subject to the same behavioral expectations, school rules, and social norms governing restroom use. School restrooms are spaces in which all students are expected to respect the privacy of others, and there is no evidence that transgender students are any less likely than their peers to do so.

## C. Transgender students suffer social, mental, and physical health consequences when not permitted to use the bathroom aligned with their gender identity.

Research shows that when transgender students are denied the ability to use the bathroom that aligns with their gender identity, the harm manifests in their daily social experience and well-being. More than half of transgender and gender nonconforming youth report feeling unsafe in

---

[4] *Id.*

[5] *Id.*

[6] *See* Henry F. Fradella & Alexis Rowland, *Baseless Anti-trans Claims Fuel Adoption of Harmful Laws – Two Criminologists Explain*, THE CONVERSATION (June 5, 2023, at 08:07 ET), https://theconversation.com/baseless-anti-trans-claims-fuel-adoption-of-harmful-laws-two-criminologists-explain-206570 [https://perma.cc/DUP8-5E43].

bathrooms, and nearly half report negative experiences related to bathroom use because of their gender identity or expression.[7] Students also describe experiences of exclusion, harassment, and stigmatization that reinforced their status as outsiders among their peers.[8] Bathroom policies and practices unquestionably affect transgender students' sense of safety, belonging, and quality of life within the school environment.

Bathroom restrictions can also exacerbate the anxiety, stigma, and psychological harms experienced by transgender students. Feelings of unsafety in school bathrooms result in a reduction of transgender students' psychological well-being, such as an increase in anxiety.[9] These effects can be even more severe. A study of transgender college students found that respondents who had been denied access to a school bathroom or other facility due to being transgender were 45% more likely to have attempted suicide at some point compared to those who were not denied access to a bathroom.[10]

Beyond mental health impacts, school district policies that prevent transgender students from using the bathroom that aligns with their gender identity can have potentially catastrophic physical health consequences. A 2021 study found that, in the past year, 49% of transgender and nonbinary young people reported sometimes or always avoiding public bathrooms because of concerns around using them, with 67% reporting "holding it" and 38% reporting abstention from

---

[7] Weinhardt et al., *supra* at 144.

[8] *Id.* at 144–45.

[9] *Id.* at 149.

[10] Kristie L. Seelman, *Transgender Adults' Access to College Bathrooms and Housing and the Relationship to Suicidality*, 63 J. HOMOSEXUALITY 1378, 1388-89 (2016).

11

drinking or eating.[11] Continued use of these methods can lead to dehydration, urinary tract infections, and kidney infections, which can lead to serious physical health complications.[12]

Physical harm at the hands of others is also a serious threat. Transgender and non-binary teenagers face a higher risk of sexual assault in schools that prevent them from using bathrooms consistent with their gender identity.[13] Transgender students who had no restrictions on their bathroom use reported a 24.3% rate of sexual assault in the year before the survey was issued (already troubling).[14] At the same time, students whose bathroom or locker room use was restricted reported a 36% rate of sexual assault in that year.[15] This difference was the most profound for transgender girls forced to use the male bathroom.[16]

When balancing the harm to students implicated in this case, school districts should not be permitted to issue policies that restrict transgender students' bathroom use to their sex assigned at birth.

## II.    FORCING NEW RICHMOND STUDENTS TO USE BATHROOMS THAT ALIGN WITH THEIR BIOLOGICAL SEX WILL ESCALATE HOSTILITIES TOWARD LGBTQ+ STUDENTS AND EMBOLDEN A CLIMATE OF INTOLERANCE.

Prior to the formation of the organization New Richmond Parents for Strong Schools (the "Association"), students described the District's high school climate as generally safe and supportive of the LGBTQ+ community. As concerns regarding the District's bathroom policy

---

[11] Jonah P. DeChants et al., *Transgender and Nonbinary Young People's Bathroom Avoidance and Mental Health*, 2 INT'L J. TRANSGENDER HEALTH 351, 351 (2025).

[12] *Id.*

[13] Gabriel R. Murchison et al., *School Restroom and Locker Room Restrictions and Sexual Assault Risk Among Transgender Youth*, 143(6) PEDIATRICS 5 (2019).

[14] *Id.*

[15] *Id.*

[16] *Id.*

began to arise, the District made considerable efforts to ensure that *all* students felt safe, while also adhering to applicable legal requirements. These efforts included: the District's board meetings with parents to explain the school's obligations and efforts, additional single-stall bathrooms to ensure there are enough options for students, and excusing any related tardiness should any of the students need to be late. Def.'s Mot. Dismiss 3–4.

According to New Richmond students, it was the actions of a select few students and parents that prompted the escalation of homophobic and transphobic behavior that is now plaguing the school.[17] Students have reported a fear that transgender students will be bullied while using the boys' mutli-stall bathrooms.[18] Continued threats of violence, bullying, and other public comments have discouraged transgender students and allies from speaking up for their rights.[19]

Further reports point to more than just the cisgender female students who have engaged in this transphobic behavior. Group chats allegedly involving cisgender boys and many of the cisgender females were created to spread hate and organize a walkout against the transgender students.[20] It appears from the date of the Facebook post regarding the walkout and the District's public meetings that the actions took place at the high school before the District meetings in February. Allies of the out LGBTQ+ students also felt the impact of this hate.[21]  If the District

---

[17] *See* CONSERVATIVE PATRIOT LENS, *supra*, at 55:08–56:04.

[18] *See id*. at 1:04:17–1:06:01.

[19] *See id.* at 20:43–21:05, 32:50–33:46. Facebook posts also confirm that the LGBTQ+ student population is facing direct attacks. Student A, a transgender student at New Richmond, posted that peers they have known for years "don't respect my community." Student A, FACEBOOK (Feb. 4, 2026, at 06:29), https://www.facebook.com/████████2010/posts/766686879850786 [https://perma.cc/9JMU-UT53]. Conversations are "riddled with hate," such as when a student wished they were "born back in the 1990's [sic] . . . [b]ack when gay was weird and everyone was happy." *Id.*

[20] A facebook post about an organized walkout that few students participated in on the New Richmond Word of Mouth Community page included comments of other parents acknowledging attendance or wishing to have attended. Lauren Januszewski, FACEBOOK (Feb. 3, 2026 at 18:44), https://www.facebook.com/groups/711829470114058/posts/1551642339466096/ [https://perma.cc/9TTG-YBD9].

[21] *See* CONSERVATIVE PATRIOT LENS, *supra*, at 32:50–33:46.

must succumb to the demands of the Association, not only will further harm come to LGBTQ+ students, but it will also galvanize the intolerant and hateful culture that has developed.

### III.   THE SUPREME COURT'S DECISION IN THE *B.P.J* CASE DOES NOT APPLY TO THE COURT'S DECISION IN THIS CASE.

The Supreme Court of the United States' recent decision in *B.P.J.* makes two things clear. First, the Court believes that equality in school sports under Title IX is different from other areas protecting equal opportunity given the competitive nature and physical risk. *West Virginia v. B.P.J.*, No. 24–38, slip op. at 8 (U.S. June 30, 2026). Second, whether transgender individuals may access school facilities consistent with their gender identity under inclusive or exclusionary policies is a matter left to individual states. *Id.* at 4. Neither of these rulings undercut the precedent in *Whitaker* or *Martinsville* disallowing schools to discriminate based on sex stereotyping. *See Whitaker*, 858 F.3d at 1049 (holding that a school policy requiring an individual to use a restroom that does not align with their gender identity necessarily punishes gender nonconformity and therefore violates Title IX); *A.C.*, 75 F.4th at 771 (reaffirming *Whitaker* and holding that a school district's restrictive bathroom access policy violated Title IX because it "treat[ed] the three [transgender] plaintiffs worse than other boys because of their transgender status").

In the Court's recent opinion, it discusses in depth what makes sports equality different under Title IX for discrimination purposes. *See B.P.J.*, slip op. at 8 ("By referring to contact sports and competitive skill, [Title IX] plainly recognized the inherent physical differences between biological men and biological women—as well as the safety and competitive fairness concerns that would arise if males were allowed to compete in female sports."). The decision did not address general sex discrimination under Title IX and even went so far as to distinguish sex discrimination as seen in *Bostock* from Title IX sex discrimination in sports, specifically. *Id.* at 9. ("[T]he only

14

question here is whether schools may limit women's and girls' sports to biological females—a question that was not addressed by *Bostock* . . . .") (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020)). This seems to send a message that this specific issue, sports equality under Title IX only applies to a binary system because of the alleged physical differences and risks. The Court cited these differences and risks as "competitive skill" such that without a "gender-based classification," "boys would dominate girls' programs and deny them an equal opportunity" and risk serious injury. *B.P.J.*, slip op. at 10, 12. While some may argue that there are physical differences and risks associated with bathroom use, this argument falls flat, as any alleged biological or physical differences are unlikely to affect one's ability to relieve oneself or "freshen up". In the present case, the inherent competitive skill referred to in *B.P.J.* is absent as there is no inherent physical difference in bathroom usage that provides one sex or the other with the same advantage that the Court refers to in *B.P.J.* Furthermore, the alleged risks cited by Plaintiffs in this case, privacy, safety, and unfair burden upon girls, are not close to reality as Defendants point out in their motion to dismiss. The risk needs to be real and practical, not theoretical. *See Whitaker*, 858 F.3d at 1052 (finding that the state's proposed interest of privacy for all students was "sheer conjecture and abstraction," because "[a] transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing their bodily functions."). Therefore, the same reasoning cannot apply to this issue.

Even if the Supreme Court held more broadly that sex discrimination was allowed in all areas under Title IX or under equal protection in the school context, *the* deference that the Court provided to the states in *B.P.J.* is key here. As the Court noted regarding the complexity of transgender discrimination: "the legislative 'institution is far better equipped than the judiciary to

15

amass and evaluate the vast amounts of data,' particularly in cases involving a topic of 'inherent complexity.'" *B.P.J.*, slip op. at 25 (quoting *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997)). The state of Wisconsin's legislature has not yet decided the issue of transgender bathroom access, and thus individual schools have created their own policies around it. Here, the New Richmond School District chooses not to implement such discriminatory policies, and they cannot be compelled to do so without invalidating their decision-making process.

## CONCLUSION

Transgender students are greatly harmed by policies that restrict their bathroom choice, and non-transgender students are not harmed by policies that allow transgender students bathroom freedom. On behalf of LGBTQ students across Wisconsin, GSAFE urges this Court to dismiss this case.

Dated: July 17, 2026

/s/ *Jade Hall*
Jade Hall
*Counsel for Amicus Curiae*

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to the rules contained in Fed. R. App. P. 32(a)(7)(B), Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6), excluding parts exempted by Fed. R. App. P. 32(f). This brief was produced using 12-point Times New Roman font. The length of this brief is 3149 words.

/s/ *Jade Hall*
Jade Hall