UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

NEW RICHMOND PARENTS FOR STRONG
SCHOOLS, UA.,

     Plaintiff,

v.                                                                          Case No. 3:26-cv-316

SCHOOL DISTRICT OF NEW RICHMOND
BOARD OF EDUCATION,

     Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiff, New Richmond Parents for Strong Schools, UA, filed this lawsuit because the School District of New Richmond (the "District" or the "Defendant") has an unlawful policy that violates the rights of female students by allowing boys to use the girls' bathrooms, a policy that the Complaint alleges violates Title IX, the constitutional right to bodily privacy, and the Equal Protection Clause. The Complaint alleges: (1) a violation of Title IX because the District does not protect the privacy of female students in the District's schools but instead has chosen to provide preferential treatment to males and adopt and implement a policy that discriminates against and harasses girls; (2) a violation of 42 U.S.C. § 1983 because the District has violated the right of female students to bodily privacy; and (3) a violation of 42 U.S.C. § 1983 based on discrimination on the basis of sex.

The Defendant argues that existing Title IX precedent, permits, or even requires, the District to let boys use the girls' bathroom. But the District ignores the most recent decisions from the U.S. Supreme Court on these issues, misunderstands the cases that it does discuss, and misunderstands the Plaintiff's actual claims. In addition, it is undisputed that existing Title IX regulations expressly allow school districts to "provide separate toilet, locker room, and shower facilities *on the basis of sex*." 34 C.F.R. § 106.33 (emphasis added). Moreover, the Supreme Court's recent decisions have rejected the interpretation of Title IX upon which the District principally relies. Even if the District were correct on its reading of Title IX, that would not dispose of Plaintiff's separate constitutional claims.

Ultimately, what the District's motion asks the Court to do is not warranted under Rule 12(b)(6). It asks the Court to weigh the seriousness of the harms alleged by female students and discount factual allegations in the Complaint. The Complaint alleges that girls have lost the privacy of sex-separated facilities, altered their daily behavior, missed instructional time, experienced anxiety, and have been directed to use separate facilities because of their sex. Whether those allegations ultimately establish violations of Title IX, the constitutional right to bodily privacy, or the Equal Protection Clause is a question for summary judgment or trial, not a motion to dismiss. At this stage, the Court need only determine whether the Complaint plausibly states claims for relief. It does.

## FACTUAL BACKGROUND

The Complaint alleges that the District maintains a policy permitting male students to use the girls' bathrooms.[1] Dkt. 1, ¶¶15, 28. According to the Complaint, the District has stated its policy as follows: if a female student "walks into the closest girls' bathroom and there is a male student she doesn't feel comfortable with, she should walk out and can use the single-stall bathrooms," and "if she is late to class as a result, she could obtain a pass." Dkt. 1, ¶53. That is the stated policy of the District, and that is the policy challenged in the Complaint.

As a result of this policy, female students avoid bathrooms, alter daily behavior, feel unsafe in what should be safe spaces, experience anxiety, lose access to facilities designated for girls and lose class time. Dkt. 1, ¶¶ 15, 28–29, 32–36, 44–49, 52–58, 60, 62 and 67–71. The District was aware of these concerns, and the District acknowledges that female students relayed their concerns regarding this policy to the District. Dkt. 11, ¶¶36–38, 53–54, 57–60.

Plaintiff, New Richmond Parents for Strong Schools (the "Association" or the "Plaintiff"), is comprised of students and parents of students who are or were enrolled in the District, and whom attend the high school where a male classmate who "identifies" as a girl uses the girls' bathrooms. Dkt. 1, ¶¶16-18, 34. The members of the Association have a direct, substantial, and legally protectable interest in

---

[1] The allegations of the Complaint must be accepted as true for purposes of this motion to dismiss. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) ("at the pleadings stage, we accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.").

protecting the bodily privacy of minor students from members of the opposite sex while in the District's bathrooms. Dkt. 1, ¶19.

For example, A.D., a 15-year-old student and Association member, reported to the District that an older boy had been using the girls' bathroom that she regularly uses and that this has been occurring throughout the entire school year. A.D. reported that the boy frequently remains in the bathroom beyond simply using the facilities, the student stands at the mirror adjusting hair and makeup, adjusting bra padding, and using a cell phone, and the student has been observed using the phone camera. Dkt. 1, ¶¶23–38. A.D. cannot use the bathroom without significant discomfort. The student is much taller and physically larger than most of the female students. Dkt. 1, ¶ 35. This results in A.D. feeling fearful and unsafe. She is unable to adequately focus on her education. Dkt. 1, ¶ 36. A.D. does not want to be seen as rude or mean so she does not say anything. *Id.* She has heard that other female students who have raised concerns have been called transphobic. *Id.* Her mother, N.D., also an Association member, is considering whether she must withdraw her daughter from the school district to protect her safety and privacy. Dkt. 1, ¶ 23–24.

Another student, E.F., an Association member, alleges that after learning that a boy was using the girls' bathrooms, she became anxious about encountering him. Dkt. 1, ¶¶42-49. School administrators told E.F. that if she or other girls were uncomfortable with a boy using the girls' bathrooms, they would need to use one of the single-user bathrooms instead. Dkt. 1, ¶ 45. E.F. misses class time because all of the single-user bathrooms are located on the opposite side of the school from her

classrooms. Dkt. 1, ¶ 47. E.F. is also forced to miss parts of her lunch hour in order to use the single-user bathrooms. Dkt. 1, ¶ 48. This disrupts E.F.'s ability to eat and participate fully in her school day. *Id.* E.F. also experiences significant anxiety and discomfort over the possibility that male students may also be allowed in girls' locker rooms. Dkt. 1, ¶ 49.

The Complaint also alleges that student Association member, S.T., raised concerns directly with school officials and was likewise told to use a single-user bathroom if she felt uncomfortable sharing the girls' bathroom with a male student. Dkt. 1, ¶¶52–58. After her mother publicly criticized the District's policy, S.T. became the target of threats and criticism at school. Dkt. 1, ¶ 54. Her mother, Association member, J.T., subsequently reached out to Superintendent Miller and members of the school board to formally address her concerns about the policy and the bullying. Dkt. 1, ¶ 57. Superintendent Miller did not take any meaningful steps to protect S.T. *Id.* Instead, he encouraged S.T. to raise her own concerns with administrators, and the District's Title IX Coordinator ultimately concluded that the reported conduct did not constitute harassment or discrimination warranting further action. Dkt. 1, ¶ 58.

The Complaint alleges that these experiences are not isolated incidents but the foreseeable result of the District's policy permitting boys to use girls' bathrooms while directing girls who object to use separate single-user facilities instead. Dkt. 1, ¶¶44–48, 52.

## ARGUMENT

**I.     *Whitaker* and *A.C.* Have Been Abrogated by *B.P.J.*, *Skrmetti*, and *Louisiana.***

The District's primary defense is that Plaintiff's claims must fail because it is *compelled* to allow boys in the girls' private facilities due to the Seventh Circuit's decisions in *Whitaker* and *A.C.*  But *Whitaker* and *A.C.* have been abrogated by the United States Supreme Court's decisions in *West Virginia v. B.P.J.*, *United States v. Skrmetti*, and *Department of Education v. Louisiana. See W.V. v. B. P. J. by Jackson*, No. 24–43, 2026 WL 1868739; *U.S. v. Skrmetti*, 605 U.S. 495 (2025); *Dept. of Educ. v. Louisiana*, 603 U.S. 866 (2024). *Whitaker/A.C.*'s Title IX holding has been abrogated by *B.P.J.* and *Louisiana*. And their equal protection holding has been abrogated by *B.P.J.* and *Skrmetti*.

Indeed, the writing has been on the wall for a while. Last summer, in a case against a Wisconsin school district brought by a transgender student seeking access to the opposite sex bathroom, the Seventh Circuit *sua sponte* vacated their own decision and asked for briefing on whether *Whitaker* and *A.C.* should be explicitly overruled in light of *Skrmetti*:

> ORDER: Based on the Supreme Court's recent decision in United States v. Skrmetti, No. 23-477, 2025 WL 1698785 (June 18, 2025), we *sua sponte* vacate our opinion dated June 12, 2025, and grant panel rehearing to consider whether the court should overrule *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017), and *A.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023), in light of *Skrmetti*.

*See, D.P. v. Mukwonago Area Sch. Dist..*, No. 23-CV-876 (7th Cir. June 30, 2025) (order granting panel rehearing and vacating prior opinion).[2] Shortly thereafter, the Plaintiff in that case sought to (and did) moot the appeal, and so the issue was never resolved.

More recently, in a follow-up appeal in *A.C.,* the Seventh Circuit issued an order holding that appeal until the *B.P.J.* decision, and is now taking briefing on its effect on *Whitaker* and *A.C.*:

> ORDER: This appeal will be held without oral argument until the Supreme Court has issued its opinion in *West Virginia v. B.P.J.*, No. 24–43 (cert. granted July 3, 2025). Within 14 days of the Supreme Court's decision in that case, the parties must file supplemental memoranda recommending how this appeal should be resolved.

*See, A.C. v. Metro. Sch. Dist. of Martinsville*, No. 22-1786 (7th Cir. Sept. 19, 2025) (order).[3]

### A.   B.P.J. *and* Louisiana *Abrogate* Whitaker's/A.C.'s *Title IX Holding.*

Both *Whitaker* and *A.C.* held that discrimination based on transgender status constitutes discrimination "because of sex" under Title IX.  Both held that "sex" in Title IX was not limited to biological sex, but instead included gender identity and, as a result, those cases prohibited a school district from barring boys who identified as girls from using the girls' bathroom. *Whitaker*, 858 F.3d 1034, 1049–50; A.C., 75

---

[2] Available at https://www.courtlistener.com/docket/67684068/60/dp-v-mukwonago-area-school-district/.

[3] Available at https://www.courtlistener.com/docket/69579138/57/ac-v-metropolitan-school-district-of-martinsville/.

F.4th 760, 769. The holding that "sex" in Title IX included gender identity was critical to the conclusion in those cases. But that holding does not survive *B.P.J.*

In *B.P.J.* the Supreme Court held that limiting sports teams based on biological sex *does not* violate Title IX. The Court's reasoning applies fully to the bathroom context, and so directly abrogates *Whitaker* and *A.C.* The Court squarely held that "[t]he term 'sex' in the 1972 Title IX statute … and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex." *B.P.J.*, No. 24–43, slip op. at 10 (U.S. June 30, 2026). Even more specifically, the Court explained that "at the time of enactment," the "meaning of the term 'sex' did 'not [include] gender identity.'" *Id.* at 8. By contrast, and in direct conflict with this reasoning, *Whitaker* and *A.C.* held that "discrimination based on transgender status" is inherently "a form of sex discrimination" prohibited by Title IX. *Whitaker*, 858 F.3d 1034 at at 1049 *Whitaker*, 858 F.3d at 1047–50; *A.C.*, 75 F.4th 760 at 769. The *A.C.* decision even described this as the "crucial question" for its Title IX holding—"how … Title IX's prohibition against discrimination 'on the basis of sex' [ ] applie[s] to transgender people." *Id.* The Seventh Circuit's logic in *Whitaker* and *A.C.* cannot be squared with the Supreme Court's holdings in *B.P.J.*

The Supreme Court's definitive interpretation of the word "sex" applies everywhere Title IX uses the word. Once the Court has authoritatively interpreted "sex" to mean biological sex in Title IX's sex-separation provisions, lower courts cannot give the same word a different meaning when discussing bathrooms. Under the "Presumption of Consistent Usage" identical words used in different parts of the

same act are intended to have the same meaning. *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433–34, 52 S. Ct. 607, 76 L. Ed. 1204 (1932).

The Supreme Court in *B.P.J.* also relied heavily on the initial regulations implementing Title IX, which, in light of the history of their adoption, were "especially useful in determining the statute's meaning." *B.P.J.*, No. 24–43, slip op. at 9. Those regulations, the Court emphasized, "expressly permit schools to maintain separate teams for 'members of each sex.'" *Id.* (quoting 34 C.F.R. 106.41(b)). And the regulations "allowed separate sports teams precisely because of the … inherent physical differences between biological women and biological men," which the Court held was "reasonable." *B.P.J.* at 10.

Even before *B.P.J*, the Supreme Court's *per curiam* decision in *Department of Education v. Louisiana*, 603 U.S. 866 (2024), already undermined, if not abrogated, *Whitaker*'s and *A.C.*'s Title IX holding. The Department of Education under the Biden administration had adopted sweeping new regulations that effectively adopted *Whitaker*'s and *A.C.*'s holdings and redefined sex discrimination in Title IX to encompass gender identity. In that case, the Supreme Court denied the Biden administration's applications for partial stays of preliminary injunctions blocking the new rule. *See id.*

Notably, *all nine Justices* agreed that the plaintiffs were entitled to preliminary injunctive relief as to three key provisions of the rule, including the provision redefining sex discrimination to encompass gender identity. *Id.* at 867. The case is highly significant given that the rule itself, and the Biden administration's

- 9 -

lawyers, in their filings, heavily invoked *Whitaker* and *A.C.* Nevertheless, the Supreme Court agreed, unanimously, that the gender identity provisions of the 2024 rule were likely unlawful. And, in fact, on January 9, 2025, the district court in *Tennessee v. Cardona* vacated the 2024 Title IX rule in its entirety. *Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025).

The District might argue that *B.P.J.* was about girls' sports rather than girls' bathrooms and, as a result, *B.P.J.* is distinguishable from this case. But as with sports, the initial implementing Title IX regulations, adopted just a few years after the statute, also permit sex-separated bathrooms. 34 C.F.R. § 106.33. Indeed, what is now 34 C.F.R. § 106.33 (originally 45 C.F.R. § 86.33),[4] says explicitly that schools "may provide separate toilet, locker room, and shower facilities on the basis of sex." *B.P.J.'s* core holding that "sex" in Title IX refers solely to biological sex and <u>not</u> gender identity is as applicable to bathrooms as it is to sports. There is no way to distinguish *B.P.J.* in a way that saves *Whitaker* and *A.C.*

Perhaps the clearest way to state the conflict between *B.P.J.* and *Whitaker*/*A.C.* is that the Supreme Court in *B.P.J* held that Title IX does not require schools to redefine sex-separated sports according to gender identity. *B.P.J.*, No. 24–43, slip op. at 14, n.4. *Whitaker*/*A.C.*, on the other hand, concluded that Title IX requires access based on gender identity. *Whitaker*, 858 F.3d at 1049; *A.C.*, 75 F.4th at 769. Those propositions cannot both be true.

---

[4] Available at https://files.eric.ed.gov/fulltext/ED108275.pdf.

**B.    B.P.J.** *and* **Skrmetti** *Abrogate* **Whitaker's/A.C.'s** *Equal Protection Holdings.*

*Whitaker*'s and *A.C.*'s equal protection holdings also do not survive *B.P.J.* and *Skrmetti.* In *B.P.J.*, in addition to its Title IX holding, the Court held that sex-separated sports teams do not violate the Equal Protection Clause. *B.P.J.*, No. 24–43, slip op. at 14–26. Such policies survive heightened scrutiny based on the "inherent physical differences between women and men." *Id.* at 19–20. Importantly, the Court held that States can survive heightened scrutiny based on the "general physical differences between males and females," without "account[ing] for the individual physical capabilities of (and differences among) every biological male who might want to play on a women's or girls' team." *Id.* at 19. In other words, "[s]tates are not required to conduct an individual-by-individual comparison of the physical and athletic capabilities of all biological males in order to satisfy intermediate scrutiny." *Id.* at 20. The Court emphasized the "enormous practical and administrability problem [that] would arise if courts suddenly had to make such individualized exemptions." *Id.* 21–22.

The Supreme Court decision in *United States v. Skrmetti* also undermined *Whitaker* and *A.C.*, as the Seventh Circuit already recognized in its order in the *Mukwonago* case noted above. *Skrmetti*, 605 U.S. 495 (2025). *Whitaker* and *A.C.* relied heavily on the misguided view that separate bathrooms reflect "sex stereotyping," by treating students "who fail to conform to the sex-based stereotypes associated with their assigned sex at birth, differently." *Whitaker*, 858 F.3d at 1051. The Supreme Court rejected a similar argument in *Skrmetti.* The "plaintiffs'

allegations of sex stereotyping are misplaced," the Court explained, because the law was based, not on stereotypes, but on a "legitimate, substantial, and compelling interest in protecting minors from physical and emotional harm" caused by "potentially irreversible medical procedures." *Skrmetti*, 605 U.S. 495 at 516– 17 (citations omitted).

So too here. Separate bathrooms are not based on stereotypes, but on basic biological differences between the sexes and privacy and safety concerns. Indeed, many courts have concluded that sex-separated facilities survive intermediate scrutiny. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 805 (11th Cir. 2022); *Roe v. Critchfield*, 137 F.4th 912, 922–26 (9th Cir. 2025); *Bridge on behalf of Bridge v. Oklahoma State Dept of Educ.*, 711 F. Supp. 3d 1289, 1294 (W.D. Okla. 2024); *Johnston v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 669 (W.D. Pa. 2015). "[P]rotecting the privacy interests of students to use the bathroom away from the opposite sex" has long been recognized as an important governmental interest. *Adams*, 57 F.4th 791 at 805. Even the Supreme Court has recognized that privacy interests would require separate facilities in college—how much more so in elementary, middle, and high school, where students' bodies are still developing. *United States v. Virginia*, 518 U.S. 515, 550–51 n.19 (1996).

Finally, in both *B.P.J.* and *Skrmetti*, the Court held that the laws at issue there did not "classify on the basis of transgender status," and, in any event, "[t]his Court has not previously held that transgender individuals are a suspect or quasi-suspect

- 12 -

class." *Skrmetti*, 605 U.S. 495 at 517–18; *B.P.J.*, No. 24–43, slip op. at 23. If separating sports teams based on sex does not discriminate based on gender identity, then neither do separate bathrooms.

## II.    The Plaintiff Has a Valid Claim for Discrimination under Title IX.

Once *Whitaker* and *A.C.* are set aside, it becomes clear that Plaintiff has a valid claim under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[5] The Plaintiff's claim that the girls in the District are being subjected to discrimination and denied educational benefits on the basis of sex fits squarely within Title IX.

### A.    *The District's policy deprives only girls of the benefits of sex-separated bathrooms.*

The implementing regulations of Title IX specifically state that "[a] recipient may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. The obvious logic of the regulation is that allowing members of the opposite sex to share bathrooms, locker rooms and showers imposes unfair burdens on the sex for whom the bathroom, locker room or shower was intended.

---

[5] The Defendant does not deny that it receives Federal financial assistance and is, thus, covered by Title IX. Dkt. 1, ¶ 7.

The District argues, however, that despite that logic, the District is not discriminating if it imposes that burden on both boys and girls. Dkt. 11:9. But that is a facile response that does not survive scrutiny. First, when the girls and their parents complained to the District, the District never said that its policy applied to girls who wanted to use the boys' bathrooms. The District has always described the policy in one direction–boys may use the girls' bathroom–and girls who are adversely affected by that may use one of the single-user bathrooms. Dkt. 1, ¶ 45.

Second, the privacy issue at stake here is asymmetrical in several ways. Girls have more and different issues about a boy using their bathroom than vice versa. The asymmetry stems from differences in physical vulnerability and the statistical realities of sexual violence. Because women and girls experience sexual assault at substantially higher rates than men and boys, the privacy and safety concerns implicated when girls share intimate spaces with boys are not the same as those implicated in the reverse circumstance. *See, e.g.,* Michael Planty et al., *Female Victims of Sexual Violence, 1994–2010*, U.S. Dep't of Justice, Bureau of Justice Statistics, NCJ 240655, at 4–5 (2013) (finding that from 1994-2010 over 90% of rape or sexual assault victims were female (see Table 3 at p. 4) and that males committed approximately 95% of all sexual violence against females (see footnote 2 at p. 5)). Girls reasonably perceive exposure to a risk that boys do not face to the same degree.

This asymmetry is not solely physical. Adolescence is a period of body self-consciousness for all students. *See, e.g., Cornfield ex rel Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1323 (7th Cir. 1993); *see also Safford Unified Sch. Dist.*

*No. 1 v. Redding*, 557 U.S. 364, 375 (2009) ("adolescent vulnerability intensifies the patent intrusiveness of the exposure"). At the same time, girls are more frequently exposed to messages that encourage awareness of potential safety risks involving unfamiliar males, particularly in situations concerning intimate spaces. *See* Ariagor Manuel Almanza Avendaño et al., *From Harassment to Disappearance: Young Women's Feelings of Insecurity in Public Spaces*, 17 PLoS ONE e0272933, at 2 (2022) (finding that processes of gender socialization increase young women's sense of vulnerability to a continuum of threats in public space, based on group interviews with junior high, high school, and university students). Accordingly, the presence of a boy in a girl's intimate space may reasonably implicate privacy and safety concerns for female students that boys do not experience in the same way, independent of whether any actual threat is present.

Third, the issue in New Richmond is undisputed to be one-sided. A boy uses the girls' bathroom, and no girl uses the boys' bathroom. The District knows that only girls are being adversely impacted by its policy. Only girls have to line up and wait to use a single-user bathroom. Only girls are late for class as a result of the lines. Only girls are experiencing the fear and anxiety expressed by the members of the Association. Yet the District intentionally refuses to shift the burden away from the students who are actually harmed by its policy. The District could easily require the one male student who wishes to use the girls' bathroom to use one of the four available single-user bathrooms. Instead, it has chosen to keep the policy in full force and effect

and to require multiple girls to wait in line, arrive late to class, and experience anxiety. That constitutes discrimination on the basis of sex under Title IX.

As one district court recently explained, the relevant question in a Title IX case such as this is "but-for the plaintiffs' status as females, would the defendants have treated them more favorably?" *Soule v. Connecticut Ass'n of Schools*, 755 F. Supp. 3d 172, 199 (D. Conn. 2024). The answer here is yes. If the student members of the Association were boys instead of girls, they would still have a boys-only bathroom. Instead, the District allows boys to use the girls' bathroom, so only girls lose the privacy that Title IX allows schools to provide. The allegations in the Complaint are evidence of that unequal treatment.

### B.   *The allegations in the Complaint state a viable Title IX claim.*

The District principally relies on *Whitaker* and *A.C.*, arguing that those decisions compelled it to adopt the challenged policy. As explained above, based on *B.P.J., Skrmetti*, and *Louisiana*, that is not the case. But even if *Whitaker/A.C.* were not abrogated, they still would not resolve this case. Neither decision addressed the competing rights of <u>female</u> students nor considered whether requiring <u>females</u> to share facilities with males creates a hostile environment under Title IX. *Whitaker*, 858 F.3d 1034 at 1054; *A.C.* 75 F.4th 760 at 772–23. Defendant essentially assumes that because *Whitaker/A.C.* recognized one student's rights, they necessarily extinguished any conflicting rights possessed by female students. That proposition is nowhere in *Whitaker/A.C.*

The Seventh Circuit in *Whitaker* and *A.C.* held states cannot justify sex-separated bathrooms "based upon overbroad generalizations about sex." *Whitaker*,

858 F.3d 1034 at 1051; *see also A.C.*, 75 F.4th 760 at 769. Instead, the Court in both cases effectively required districts to make "individualized exemptions" if the district could not muster sufficient evidence about the harm from the particular student using the opposite sex bathroom. *Whitaker*, 858 F.3d 1034 at 1054 (emphasizing the lack of "evidence of how [a] preliminary injunction [would] harm [the District], or any of its students or parents"); *A.C.*, 75 F.4th at 772–73 (concluding that privacy concerns "appear[ ] entirely conjectural" because "[n]o [other] students complained."). Regardless, even if *Whitaker*'s and *A.C.*'s mode of reasoning survived *B.P.J.*, there *is* evidence here—significant evidence—that the District's policy is harming girls. *See supra* at pp. 3–5.

The question presented in this case is therefore one that neither *Whitaker* nor *A.C.* answered. It is whether the District's policy authorizing boys to use the girls' bathrooms violates the rights of female students under Title IX. The Association expressly alleges that the District's policy violates the girls' privacy and amounts to conduct that is so severe, pervasive, and objectively offensive that it effectively denies girls in the District educational opportunities. Dkt. 1, ¶78

As the Defendant correctly notes (Dkt. 11:10), the Seventh Circuit has yet to rule on whether conduct by a school district like the District's conduct here violates Title IX, so this is currently an open issue. At the pleading stage, this Court is not deciding whether Plaintiffs will ultimately prevail. This Court need only determine whether the Association has plausibly alleged that female students' compelled

- 17 -

exposure to male students in intimate facilities constitutes discrimination or a hostile environment under Title IX.

The District attempts to minimize the Association's allegations by characterizing them as nothing more than "subjective feelings of discomfort" arising from the possibility of sharing facilities with members of the opposite sex. (Dkt. 11:14). But that framing ignores both the allegations of the Complaint and the procedural posture of this case.

The Complaint alleges far more than generalized discomfort. One student Association member alleges that she now avoids using the bathroom whenever possible, experiences anxiety related to normal biological needs during the school day and is unable to adequately focus on her education because she has been displaced from a space designated for girls. Dkt. 1, ¶¶23–38. Another Association member alleges that she misses class time and portions of her lunch period because the District has effectively directed girls who object to sharing facilities with a male to use distant single-user bathrooms instead. Dkt. 1, ¶¶42–49. Other students similarly allege that they must alter their behavior, forego use of girls' facilities, or risk encountering a male in those facilities. Dkt. 1, ¶¶44–48, 52–54, 60. These allegations are much more than "discomfort." They are the result of discriminatory conduct that causes students to miss educational opportunities.

## C.    *Authorities cited by the District do not justify dismissal.*

In *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 663, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999), the Supreme Court established that a Title IX hostile-environment claim exists when conduct is so severe, pervasive and

objectively offensive that it deprives victims of access to educational opportunities. The question is whether the Plaintiff's allegations meet that standard.

The District cites three cases that it contends support a motion to dismiss the Title IX claim by the Plaintiff: (1) *Parents for Privacy v. Barr,* 949 F.3d 1210, 1228 (9th Cir. 2020); (2) *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534-35 (3rd Cir. 2018); and (3) *Students & Parents for Privacy v. United States Dep't. of Educ.*, No. 16-cv-4945, 2017 U.S. Dist. LEXIS 213091 (N.D. Ill. Dec. 29, 2017). None of these decisions justify dismissal.

First, it is obvious that all of these cases predate *B.P.J.* The cases the Defendant relies upon were all decided in a paradigm where several lower courts had recognized such claims. *B.P.J.* rejected the premise underlying those decisions.

Second, *Parents for Privacy* and *Boyertown* are decisions of the Ninth and Third Circuits, respectively, and carry no binding authority in the Seventh Circuit. Moreover, both decisions framed the hostile-environment analysis around whether the *transgender student's presence alone* constituted harassment. The Plaintiff's claim is different. Here the actionable conduct is not solely the presence of a boy in the girl's bathroom but also the *District's deliberate policy decision* to expose girls to boys in intimate facilities and to continue that conduct, with actual knowledge that this caused the girls harm.

Third, there are facts here that were not present in those cases. To name a few: (1) the boy having and using a cell phone, including the camera, in the girls' bathroom, (2) the fact that the boy was older, larger and stronger than the girls, which

raised fear on the part of the girls, (3) the District's refusal to tell the girls and their families whether boys were also using the girls' locker room, and (4) the District's refusal to address the girls' concerns or the bullying they experienced.

Last, with respect to *Students & Parents for Privacy,* the decision relied upon by the Defendant in its brief is an unpublished 2016 Northern District of Illinois preliminary injunction ruling. But in 2019, the District Court in that same case issued a decision on a motion to dismiss and *denied* dismissal of the hostile-environment claim. *Students & Parents for Priv. v. Sch. Directors of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 900 (N.D. Ill. 2019).

In its brief, the Defendant expressly concedes that "[t]he facts in *Students & Parents for Privacy* are closely aligned with the facts here." Dkt 11:10. But what the Defendant ignores is that the District Court in that case found that those facts (closely aligned to the facts here) were "far more than is necessary … to state a claim for sexual harassment." *Students & Parents for Priv. v. Sch. Directors of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891 at 900.

### D.    *The Complaint plausibly alleges deliberate indifference.*

The District contends that the Complaint lacks "any factual allegation that the District had notice or acted with deliberate indifference towards the alleged harassment." (Dkt. 11:18.) That is incorrect. The Complaint alleges precisely what *Davis* requires. It alleges notice of ongoing discriminatory conduct affecting students and a response that was clearly unreasonable in light of the known circumstances.

The Complaint alleges that District officials had actual knowledge of the conduct and its effect. Dkt. 1, ¶¶ 27, 32–33, 37–38, 45–46, 52–60. District officials

knew that at least one boy was using girls' bathrooms pursuant to District policy. Dkt. 1, ¶ 15. They also knew that female students and their parents raised concerns. Dkt. 1, ¶¶ 27–30, 37, 45, 52–59. These concerns were not abstract objections to the existence of the policy. They were specific reports that female students were experiencing concrete educational harms. Dkt. 1, ¶¶ 32 –38, 44–49, 52–62.

Despite receiving these reports, the District failed to take reasonable corrective action. Rather than investigate the concerns, provide an alternative that did not burden girls, or otherwise address the harms reported, the District maintained the challenged policy. These allegations plausibly establish deliberate indifference under *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), which requires only that the response to known harassment be "clearly unreasonable in light of the known circumstances." *Id.* at 648.

The Complaint also alleges that the District's policy caused female students to "undergo" harassment or made them "liable or vulnerable" to it. *Id.* at 645 (citations omitted). The alleged conduct is not a single isolated interaction between students. It is the foreseeable and recurring consequence of a District policy that governs access to intimate facilities every school day. Continued enforcement of that policy despite repeated reports supports a reasonable inference of deliberate indifference.

Nor can the District plausibly argue that the alleged conduct is not pervasive. The alleged conduct is pervasive precisely because it is ongoing by design. Every day the District maintains the policy, female students are required to confront the same loss of privacy and the same disruption to their educational experience. Dkt. 1, ¶¶ 32,

36, 47–48, 62. A reasonable factfinder could easily conclude that a policy governing daily access to intimate facilities is inherently pervasive.

### III. The Plaintiff's Second Cause of Action – Based on the Right to Privacy – is Sufficient to State a Claim.

As its second cause of action, the Association alleged a claim under 42 U.S.C. § 1983 based upon a violation of the right to privacy. The Due Process Clause of the Fourteenth Amendment "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations omitted). The right to privacy is one of those rights, including the right to privacy in intimate spaces and the right to be free from observation while nude or partially clothed. *See e.g., Adams*, 57 F.4th 791, 804-05 (listing cases); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (noting that "[t]he right to privacy is now firmly ensconced among the individual liberties protected by our Constitution."); *Doe v. Luzerne Cnty.*, 660 F.3d 169, 176-77 (3d Cir. 2011) (listing cases); *Poe v. Leonard*, 282 F.3d 123, 138 (2d Cir. 2002); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008).

The District claims this is no right at all. Not only is that wrong, but the right to bodily privacy is especially strong in the school setting where students have no practical choice but to use bathrooms, locker rooms, and similar facilities and reasonably expect not to be exposed to members of the opposite sex while in states of undress. For example in *Adams*, 57 F.4th 791, 804 (11th Cir. 2022) the court said:

> The protection of students' privacy interests in using the bathroom away from the opposite sex and in shielding their bodies from the opposite sex is obviously an important governmental objective. Indeed, the district court "agree[d] that the School Board has a legitimate interest in protecting student privacy, which extends to bathrooms." Understanding why is not difficult—school-age children "are still developing, both emotionally and physically."

Similarly, *Brannum* was a school case. In that case, the Sixth Circuit held that surveillance cameras in school locker rooms violated the students' right to privacy.

The interest in bodily privacy is even more "heightened" when children and adolescents are involved, because their bodies "are still developing, both emotionally and physically," *Adams*, 57 F.4th 791 at 804 (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020) (Niemeyer, J., dissenting)), and because children and adolescents tend to be "extremely self-conscious about their bodies," *Cornfield*, 991 F.2d 1316 at 1323; *see also Safford*, 557 U.S. 364 at 375.

Moreover, courts have recognized a right to privacy both as to one's unclothed body and as to one's "*partially* clothed body." *See, e.g., Doe v. Luzerne Cnty.*, 660 F.3d 169 at 176 (listing cases); *Poe v. Leonard*, 282 F.3d 123 at 138. And this privacy right applies, especially, to protect one's body from view by members of *the opposite sex. See, e.g., Luzerne Cnty.*, 660 F.3d 169 at 177 (finding a "reasonable expectation of privacy … *particularly while in the presence of members of the opposite sex*.") (emphasis added); *Brannum.*, 516 F.3d 489 at 494 (the "right to privacy [ ] includes the right to shield one's body from exposure to viewing by the opposite sex.").

Despite the interests of its female students in bodily privacy, the District has adopted a policy that permits boys to use girls' bathrooms. These are spaces where

students engage in inherently private activities. Girls are forced to either forgo use of their facilities or use them under conditions that compromise their privacy. If the District is right that there is no right to privacy in this situation, then there would be nothing to prevent a school from allowing male teachers to monitor girls in the girls' bathroom and to allow female teachers to monitor boys in the boys' bathroom, something virtually anyone other than the District would find extremely troubling.

The District also claims that the Association must prove "shocks the conscience." Dkt. 11:25 (citing *Robbin v. City of Berwin*, 108 F.4th 586, 589 (7th Cir. 2024)). This is inaccurate. The "shocks the conscience" language found in some substantive due process cases is not an overarching requirement for any claim under the Fourteenth Amendment, but rather an alternative test when the conduct is alleged to be so arbitrary or unreasonable as to violate due process. The Supreme Court has said this explicitly: "'Substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' *or* interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987). The Seventh Circuit recognized this, writing: "the [Supreme] Court made clear that its shocks-the-conscience analysis was not generally applicable to all substantive-due-process claims." *Khan v. Gallitano*, 180 F.3d 829, 836 (7th Cir. 1999) (listing examples, and concluding that a "fundamental rights analysis," rather than a "shocks-the-conscience" test, would apply to a tortious-interference-with-contract claim involving executive action); *see generally Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) ("The criteria that govern what is

fatally arbitrary in the latter cases depend upon whether legislation or a specific act of a governmental officer is at issue.").

The Association has stated a claim for a violation of the right to privacy. The District deliberately rejected the longstanding privacy principle underlying sex-separated facilities. It did so despite being aware of the concerns raised by female students and continued to do so despite knowing that its policy was harming only girls. It also did so despite having readily available alternatives that would have protected the privacy interests of *all* students. A policy that knowingly compromises the bodily privacy of female students in intimate spaces violates their right to privacy, and the Association has certainly stated a claim under the Rule 12(b)(6) standard.

## IV. The Association's Third Cause of Action for Sex Discrimination Under the 14th Amendment States a Valid Claim.

Sex discrimination is prohibited by the Fourteenth Amendment. *United States v. Virginia*, 518 U.S. 515, 533, 572 (1996). A plaintiff may assert a sex-discrimination claim under both Title IX and Section 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 259 (2009). A policy that discriminates based on sex is permissible "only when the classification is 'substantially related' to achieving an 'important' government objective." *B.P.J.*, No. 24–43, slip op. at 15 (citations omitted). This standard applies regardless of the supposedly "benign, compensatory purpose" of the policy. *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 728 (1982).

The District argues that there is no sex discrimination in this case. Dkt. 11:30-32. Notably, the District does not argue that their policy is justified: they cite neither an important governmental interest for its policy nor a substantial relationship

between its interest and the chosen means. The District simply claims that the Association has not even alleged sex discrimination.

Bolstering this argument, the District asserts that it has a bathroom policy that is "facially neutral" and that applies equally to "all students." Dkt. 11:30. But that is not the policy described in the Complaint, and it is certainly not the policy described to Association members by the District. According to the Complaint, the District established and enforced a girls-bathroom policy "permitting male students to access girls' bathrooms." Dkt. 1, ¶61. The policy further provides that if girls are "not comfortable using the girls' bathroom, we do have single, private bathrooms available." Dkt. 1, ¶56. And girls who miss class because of this policy, "will be excused from any tardies." *Id*. The District's policy refers only to girls' bathrooms and does not reference boys' bathrooms. Nothing in the Complaint suggests that the unwritten policy has *ever* been applied to boys in the same way it is applied to girls or even applied to boys' bathrooms in any event. It's a bespoke policy to address the demands of one boy who wants to use the girls' bathrooms.

Sex discrimination exists when a policy does not apply "in the same way" to males and females. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) (reversing the Seventh Circuit's finding that a policy was "facially neutral" under Title VII). In *DeVooght v. City of Warren*, the Eastern District of Michigan found that a prisoner-search policy "written in facially gender-neutral terms" was, in fact, "facially discriminatory" because it was enforced exclusively against female employees; "[N]o

known instances of a male dispatcher ever performing a prisoner search" exist. *DeVooght v. City of Warren*, No. 20-CV-10812, 2022 WL 413238 (E.D. Mich. Feb. 8, 2022).

The District cites *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256 (1979), but that case supports the Association here. In *Feeney*, the Supreme Court found that a veteran-only benefit did not discriminate based on sex. *Id.* at 275. The Court emphasized that the class disadvantaged by the policy was not "substantially all" female. *Id.* at 275. Many nonveterans were male, and all nonveterans, male as well as females, were placed at a disadvantage. In fact, the plaintiff in *Feeney* conceded that the policy was "neutral on its face." *Id.* at 274.

The Association makes no such concession here. The challenged policy applies specifically to girls and girls' bathrooms. In other words, "the impact of the [policy] could not be plausibly explained on neutral ground" because the policy only applies to girls. *Id.* at 275. The District's argument in its brief—that the policy is some universal bathroom policy that has been applied to both boys and girls—is not in the Complaint. Instead, the District's claim is a factual assertion that can be tested in discovery. And on the other hand, the Association must have the opportunity to prove that this policy has never been applied to boys and was always simply a girls' bathroom policy to address the unique circumstances presented by one or more male students who wanted to use the girls' bathrooms.

Details matter, and it is not enough to simply claim a policy applies both to boys and girls. In a different sex-discrimination context, plaintiffs challenged a pool

schedule that allowed "roughly equal swimming time for both men and women in the aggregate." *Curto v. A Country Place Condo. Ass'n, Inc.*, 921 F.3d 405, 410 (3d Cir. 2019). Digging deeper, however, the court found that the policy discriminated in its allotments of different times to women and men during the week, which was the real source of discrimination. *Id.* at 411. Here, the policy is not simply that all students can use the bathroom of their choice. The policy is this: If a girl "walks into the closest girls' bathroom and there is a male student she doesn't feel comfortable with, she should walk out and can use the single-stall bathrooms," and "if she is late to class as a result, she could obtain a pass." Dkt. 1, ¶53. Even if the Court were to find sufficient allegations in the Complaint to support a higher-level abstraction as advocated by the District, girls still face an asymmetry in how the rule applies in girls' bathrooms, as explained herein.[6]

The Association has alleged enough to state a claim for sex discrimination under the Fourteenth Amendment. The District communicated a policy to girls regarding their use of the girls' bathroom. No similar policy was communicated to or imposed upon boys. If the District now wants to allege that this was actually a universal, facially neutral policy with the same impacts upon boys as girls, then they are free to pursue that in discovery. But that is not what the Association alleged in the Complaint.

---

[6] The District also cites *Hayden, Whitaker,* and *Grimm*, all of which *did* find sex discrimination. Dkt. 11:20, 31-32. To the extent those precedents are applicable, here too the school has a policy that discriminates based on sex, namely a girls' bathroom policy imposing burdens on girls that are not shared by boys.

## Conclusion

The Defendant's motion rests on the premise that recognition of transgender students' interests necessarily eliminates the rights of female students under Title IX and the Equal Protection Clause. Neither *Whitaker*, *A.C.*, nor any binding Supreme Court precedent establishes that proposition. To the contrary, under *Skrmetti* and *B.P.J.* the exact opposite is true. The Association alleges that girls are denied equal access to sex-separated facilities, experience ongoing invasions of privacy, and are relegated to separate accommodations because of their sex. Whether those allegations ultimately prevail is a question for trial. At the pleading stage, they more than plausibly state claims for relief. The Defendant's motion to dismiss should therefore be denied.

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

*Electronically signed by*
*/s/ Lauren L. Greuel*

Richard M. Esenberg
Daniel P. Lennington
Cory J. Brewer
Lauren L. Greuel

1241 N. Franklin Pl.
Milwaukee, WI 53202
Phone: (414) 727-9455
Fax: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Cbrewer@will-law.org
Lauren@will-law.org

*Attorneys for Plaintiff*