Squires Waldspurger & Mace, P.A.

Michael J. Waldspurger*
Amy E. Mace
Trevor S. Helmers*
John P. Edison*
Liz J. Vieira*
Kristin C. Nierengarten
Zachary J. Cronen
Michael J. Ervin*
Abigail R. Kelzer

Marcus B. Jardine
William M. Seiler
Jesse C. Peterson
Paige E. Olson
Nolan M. Lostocco
Theo M. Britton
Gregory B. Lansing

*Also Admitted in Wisconsin

September 16, 2026

The Honorable William M. Conley
United States District Court
120 N. Henry St., Rm. 320
Madison, WI 53703

RE: *New Richmond Parents For Strong Schools, UA., v. School District of New Richmond Board Of Education*
Case No. 3:26-cv-316-wmc
Our File No. 1696-0159

Your Honor:

We are writing today on behalf of Defendant School District of New Richmond in the above-entitled matter regarding the Defendant's pending motion to dismiss the case. We would like to advise the Court of potentially relevant authority related to the Defendant's motion that was issued after the close of briefing.

On September 8, 2026, the United States District Court for the Eastern District of Wisconsin issued a decision in *Doe v. Mukwonago Area School District*, Case No. 23-cv-876, 2026 U.S. Dist. LEXIS 202005 (E.D. Wis. Sept. 8, 2026), denying that defendant's motion for judgment on the pleadings on that plaintiff's Equal Protection claim. A copy of that decision is enclosed.

Please let us know if the Court would like supplemental briefing from the parties, or if the Court would like to order oral argument on the Defendant's pending motion in order to address this recent decision or the other issues in the case.

Very Truly Yours,

Trevor S. Helmers
Elizabeth J. Vieira
Theo M. Britton

Encl.

cc: Daniel P. Lennington (via E-Service only)
Cory J. Brewer (via E-Service only)
Lauren L. Greuel (via E-Service only)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**JANE DOE #1 a minor, by her mother, and next friend, JANE DOE #2**
**Plaintiff,**

**v.** **Case No. 23-cv-876**

**MUKWONAGO AREA SCHOOL DISTRICT and JOE KOCH, in his official capacity as Superintendent of the Mukwonago Area School District,**
**Defendants.**

**DECISION AND ORDER**

Plaintiff filed this case on June 30, 2023, as an eleven-year-old transgender girl. At the time, she was about to enter sixth grade at Prairie View Elementary School ("Prairie View") in Mukwonago Area School District ("MASD"), a public school district in Waukesha County, Wisconsin. Plaintiff alleged that MASD had recently adopted a policy denying her access to the girls' bathrooms on school property, in violation of her rights under Title IX of the Education Amendments of 1972 and the Fourteenth Amendment's Equal Protection Clause. Plaintiff sought, was swiftly granted, and successfully defended on appeal a preliminary injunction that enforced her right to use the girls' bathrooms at school.

Following this sequence of events, plaintiff's own educational circumstances changed, and the Supreme Court handed down two decisions that altered the legal landscape for transgender claimants, arguably affecting the ongoing viability of plaintiff's remaining claims in this litigation. Currently before the court are defendants' motion for judgment on the pleadings, filed and briefed in the wake of the Supreme Court's decisions

in *United States v. Skrmetti*, 605 U.S. 495 (2025) and *West Virginia v. B.P.J ex rel. Jackson*, 609 U.S. __,146 S.Ct. 2356 (2026); and plaintiff's motion to compel discovery.

## I. FACTUAL BACKGROUND

The facts of this case are also described in my prior decisions and by the Seventh Circuit in its since-vacated opinion affirming the preliminary injunction. *See* ECF No. 15; *D.P. by A.B. v. Mukwonago Area Sch. Dist.*, 140 F.4th 826 (7th Cir. 2025); *Doe #1 by Doe #2 v. Mukwonago Area Sch. Dist.*, 681 F.Supp.3d 886 (E.D.Wis. 2023). For the most part the relevant facts are undisputed and, in any event, plaintiff's allegations are accepted as true in evaluating defendants' Rule 12(c) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Despite being assigned male at birth, plaintiff has identified and presented as a girl from a very young age. She was diagnosed with gender dysphoria by a medical professional and has received therapy for related emotional and psychological needs. Plaintiff first enrolled at Prairie View in the second half of third grade. Plaintiff's mother disclosed her daughter's transgender status to several school staff members, including the principal. Teachers and administrators at Prairie View supported plaintiff's transgender status in all respects, and plaintiff used the girls' bathroom without incident for the rest of third grade, all of fourth grade, and most of fifth grade.

In early April 2023, towards the end of plaintiff's fifth grade year, the Prairie View principal told plaintiff's mother that the school had been receiving phone calls from parents asking about plaintiff's genitals. Also in April 2023, plaintiff's mother became aware of a Facebook group called "Mukwonago Parents for Normal Education," which included disparaging comments ostensibly directed at plaintiff and her family.

Commenters described plaintiff as dangerous, accused her of exposing her genitals to other children in the school bathroom, and asked if her parents were pedophiles. The claims were so clearly baseless that no investigation was undertaken by the school or other authorities.

On May 15, 2023, the MASD school board held a closed executive meeting where plaintiff's bathroom use was discussed. The board did not make a decision that night but told plaintiff's mother that it was "stuck between a rock and a hard place" in that it could either upset certain vocal parents by continuing to treat plaintiff as it had for the past three years, or it could be sued by plaintiff's family if it changed course and barred her from the girls' bathrooms. ECF No. 5-32, ¶ 15.

On May 22, 2023, the board held a public meeting at which around eight members of the public spoke about transgender students' bathroom usage. As far as the record reveals, no member of the public pointed to any specific danger posed by plaintiff's continuing to use the girls' bathroom. *Id.* ¶ 17. After the meeting, then-superintendent Shawn McNulty told plaintiff's mother that plaintiff could continue using the girls' bathroom if she provided a doctor's note confirming her gender dysphoria diagnosis. Plaintiff's mother promptly provided the doctor's note, and plaintiff continued using the girls' bathroom at Prairie View.

On May 23, 2023, the president of the school board sent the following email to parents and students in the district:

> During the School Board meeting on May 22, 2023, a number of residents . . . voiced concerns over bathroom usage in our school district. The School Board of the [MASD] affirms its position that students should use the locker rooms and bathrooms of their sex at birth. The School Board directs administration to review any current accommodation plans, create a formal team-based process to address any gender-based accommodation

> requests, and implement plans accordingly. The School Board will develop policy during the summer of 2023 to address bathroom and locker room accommodation requests to be implemented prior to the start of the 2023–24 school year.

ECF No. 5-3.

Plaintiff was enrolled in a summer-school program known as MASD Summer Adventures beginning on June 19, 2023. She had attended the same program, held at Mukwonago High School, over the previous two summers, during which time she used the girls' bathrooms near her classes without incident. On June 16, 2023, plaintiff's mother received an email with a letter from Joe Koch, the new MASD superintendent. The letter stated that plaintiff would not be permitted to use the girls' bathrooms on school property starting with the first day of summer school, based on the May 23 email from the school board. ECF No. 5-5.

Plaintiff nevertheless continued to use the girls' bathroom when she started summer school. By June 22, 2023, it became apparent that MASD was monitoring plaintiff's bathroom usage. Several times during summer school, plaintiff was pulled out of class and taken to the principal's office after using the girls' bathroom. During these interactions, staff reminded her of the school's expectation that she use only the boys' bathrooms or gender-neutral bathrooms in the administrative office and health room. Plaintiff found these interactions with school staff about her bathroom usage deeply upsetting and "creepy." ECF. No. 5-30, ¶ 27.

On June 26, 2023, MASD adopted a formal bathroom policy for the district, known as Policy 5514 – "Student Privacy in Restrooms and Locker Rooms." The policy provides:

> The Board believes students should feel safe and secure in the school environment, and the Board respects their right to privacy as it pertains to the use of District facilities. To that end, except as otherwise required by

> law, students shall use restroom and locker room facilities on District property and at District-sponsored events according to each student's original sex assigned at birth.
> Student and/or parent requests for an exception or accommodation to this policy shall be considered by a team of District staff on a case-by-case basis in consultation with the student, the student's parents, the Director of Student Services, the school psychologist, the school counselor, the classroom teacher, the building principal, and any other individuals the District deems appropriate. All decisions relating to such requests will take into consideration the safety and privacy of all students.
> Accommodations for a diagnosis of gender dysphoria shall be addressed in accordance with Section 504 of the Rehabilitation Act of 1973, and the District's corresponding procedures for developing Section 504 Plans.
> The Administration shall develop administrative guidelines for the implementation of this policy and the provisions herein.

ECF No. 5-16.

Through counsel, plaintiff's mother asked the district to restore plaintiffs' access to the girls' bathrooms without litigation. The district's counsel noted in response that Policy 5514 allowed for "exceptions or accommodations on a case-by-case basis" and that the district had been trying to accommodate plaintiff in various ways—in particular by assessing her for special-education services. ECF No. 5-14. There was, however, no indication that an exception could be made to permit plaintiff to continue using the girls' bathrooms.

On June 29, 2023, plaintiff's counsel informed MASD that plaintiff would file a lawsuit and seek an emergency relief if the district did not agree "right away" to temporarily suspend enforcement of its bathroom policy with respect to plaintiff while the parties discussed a non-judicial resolution. ECF No. 5-15. Counsel for the district did not respond immediately. Plaintiff filed this lawsuit at the end of the day on June 30, 2023.

Plaintiff claims she was bullied by other students based on her gender identity multiple times a week during the end of her fifth grade year and continuing into summer

school, particularly on the school bus. ECF No.1, ¶ 34. This bullying caused her significant stress and anxiety. Plaintiff's mother stated that "[s]ince the MASD School Board began involving itself in [plaintiff's] bathroom use," her daughter faced escalating bullying and harassment from other students, and plaintiff's mental health suffered greatly. ECF No. 5-32, ¶¶ 32-33.

I note here that the duration of time from the first involvement of the MASD school board on May 15, 2023, to the entry of the preliminary injunction on July 11, 2023, was approximately two months. Moreover, the duration of time spent by plaintiff at summer school prior to the entry of the preliminary injunction on July 11, 2023—the period when plaintiff was monitored by school staff and the only time she was actively prevented from using the girls' bathroom—was approximately three weeks.

**II. PROCEDURAL HISTORY**

Along with her complaint on June 30, 2023, plaintiff filed a request for emergency injunctive relief with supporting documents. On July 6, 2023, I entered a temporary restraining order ("TRO") forbidding MASD from enforcing any policy that would prevent plaintiff from using the girls' bathrooms at school and school-sponsored events, and from retaliating against plaintiff for using those facilities. ECF No. 14. On July 11, 2023, I converted the TRO into a preliminary injunction with the same conditions. ECF No. 15. My decision relied heavily on Seventh Circuit precedent in *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Edu.*, 858 F.3d 1034 (7th Cir. 2017), another case arising out of transgender bathroom access policy in a Wisconsin public school district.

Soon after the preliminary injunction was issued, defendants filed an interlocutory appeal with the Seventh Circuit. As the appeal proceeded, the parties jointly moved to

stay proceedings in the district court for a limited period, and then for an indefinite period until the appeal reached a final resolution. During the stay, the preliminary injunction remained in effect.

On July 12, 2025, two years after the preliminary injunction was entered, the Seventh Circuit affirmed the injunctive order based in significant part on *Whitaker*—and also on *A.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023) ("*Martinsville*"), another decision the appellate court issued just before the interlocutory appeal in this case was docketed. *Martinsville*, a consolidated appeal, involved transgender bathroom access policies in two different public school districts in Indiana.

Six days after the Seventh Circuit affirmed the preliminary injunction, on June 18, 2025, the Supreme Court decided *Skrmetti*, a case concerning hormone and puberty-blocking therapy prescribed to minors for the purpose of gender transition. 605 U.S.495 (2025). On June 30, 2025, the Seventh Circuit panel sua sponte vacated its decision in this case and granted panel rehearing on whether *Whitaker* and *Martinsville*—and thus implicitly the preliminary injunction it had just affirmed—should be reconsidered in light of *Skrmetti.*

Several weeks later, on July 23, 2025, plaintiff submitted concurrent filings in the district court and the appellate court revealing her intent to seek voluntary dissolution of the preliminary injunction. ECF No. 48. Her proferred reason was that she was no longer attending a MASD school because, pursuant to her Individualized Education Program with the district, she had been placed at a private alternative school beyond the ambit of MASD's bathroom policy. ECF No. 48-1.

On July 25, 2025, the Seventh Circuit panel clarified that plaintiff was free to move to vacate the injunction if she wished, and I was free to grant that motion if I thought it prudent. Defendants objected vociferously to plaintiff's motion, accusing her of attempting to evade reconsideration in the appellate court. I heard arguments on the motion in a heated telephonic hearing on August 15, 2025, which saw plaintiff arguing to end her own injunction and defendants arguing to maintain it. For present purposes, the hearing underscored that plaintiff has entirely abandoned her claims for ongoing injunctive relief. Plaintiff's counsel now frames the case as limited to pursuing a final judgment on liability, and then seeking compensatory damages for the emotional distress plaintiff suffered in the summer of 2023 as a result of the MASD bathroom policy. ECF No. 66 at 9-11.

After due consideration, I decided that plaintiff should not be forced to defend an injunction that was no longer serving her. Accordingly, on August 21, 2025, I dissolved the preliminary injunction. ECF No. 68. The Seventh Circuit promptly dismissed the appeal for lack of appellate jurisdiction. Defendants soon filed the present motion for judgment on the pleadings in the district court, which has been pending for some time. The parties engaged in discovery, and plaintiff filed her motion to compel on May 26, 2026.

The Supreme Court threw one final wrench into the mix on June 30, 2026, in deciding *B.P.J.*, a case that addressed the permissibility of segregating school sports teams based on biological sex. 609 U.S. ___; 146 S.Ct. 2356 (2026). I invited the parties

to file supplemental briefs on the impact of *B.P.J.* on the dispositive motion pending before me, which they did.[1]

## III. DISCUSSION

### A. Defendants' Motion for Judgment on the Pleadings

#### 1. Title IX claim

Plaintiff's decision to seek dissolution of the preliminary injunction and abandon her claim for prospective injunctive relief divests this court of jurisdiction to adjudicate her Title IX claim. Damages for emotional distress are no longer recoverable for violations of antidiscrimination statutes passed under Spending Clause authority. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022). Title IX is one such statute. *Doe v. Loyola Univ. Chicago*, 100 F.4th 910, 912 (7th Cir. 2024). Since moving to vacate the preliminary injunction, plaintiff's counsel has maintained that the only remedy plaintiff now seeks is compensatory damages for emotional distress. At the hearing on the motion to vacate, counsel stated "[o]ur client suffered significant emotional distress as a result of being subjected to this policy," ECF No. 66 at 11; in plaintiff's motion to compel, counsel argued that the information sought is relevant to plaintiff's "claim for damages relating to MASD's discrimination and the harassment and bullying that followed," ECF No. 97 at 14.

A close reading of the complaint also does not reveal specific allegations of any injury suffered by plaintiff other than depression, anxiety, embarrassment, stigma, humiliation, fear, and thoughts of self-harm. *See* ECF No. 1, ¶¶ 54-59 ("Injury to Plaintiff").

---

[1] The Seventh Circuit is now also considering the impact of both *Skrmetti* and *B.P.J.* on its own precedents in *Whitaker* and *Martinsville* in an appeal from the partial granting of summary judgment to the plaintiff in *A.C. v. Metropolitan Sch. Dist. of Martinsville*, Case No. 25-1094 (7th Cir. Aug. 26, 2026) ("Martinsville II"). Oral argument in that appeal is set for September 28, 2026.

The complaint includes conclusory allegations of "academic harm," *id.* ¶ 59, and "economic and educational losses," *id.* at 19 ("Prayer for Relief"), but provides no further specificity, which is not sufficient to survive a jurisdictional review at the pleadings stage. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Without minimizing the genuine difficulties that plaintiff may have endured, the injury she has alleged falls squarely into the category of emotional distress damages not recoverable under Title IX.

If damages are not available for plaintiff's Title IX claim, and she is no longer seeking equitable relief in the form of an injunction, there is no relief the court can offer on this claim. Redressability is a key element of the standing inquiry. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And federal courts must ensure that plaintiffs have standing on each claim brought, at each stage of the litigation. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). If a plaintiff cannot demonstrate standing on a claim, then federal courts are without subject matter jurisdiction to decide that claim. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm").

Consequently, plaintiff's Title IX claim must be dismissed for lack of subject matter jurisdiction. If plaintiff can plead with more specificity non-emotional distress injury that could be redressed by compensatory damages, she may move to amend her complaint and revive her Title IX claim.

**2. Equal protection claim**

Defendants move for judgment on the pleadings, arguing that *Skrmetti* and *B.P.J.* sufficiently undermine circuit precedent that I should disregard *Whitaker* and *Martinsville* and dismiss plaintiff's claim. As plaintiff correctly notes, since both this court and the Seventh Circuit found her likely to prevail on the merits during the preliminary injunction phase, there can be little doubt now that, at a minimum, she states a claim if *Whitaker* and *Martinsville* remain good law. ECF No. 82 at 8. Any factual distinctions among *Whitaker*, *Martinsville*, and this case are not determinative of the legal issues discussed below: all the cases involve bathroom access policies in public school districts that necessarily operate to bar transgender students from using the bathrooms that align with their gender identities.

***a. Summary of key precedent***

***(1) Whitaker***

In *Whitaker*, the Seventh Circuit held that the Kenosha Unified School District's bathroom access policy violated Title IX and the Equal Protection Clause. With respect to the transgender plaintiff's equal protection claim, the appellate court concluded that the school district's bathroom access policy enacted an inherently sex-based classification and thus was subject to heightened, or intermediate, scrutiny. 858 F.3d at 1051 (noting the district's policy "cannot be stated without referencing sex, as the [district] decides which bathroom a student may use based upon the sex listed on the student's birth certificate"). Applying intermediate scrutiny to the bathroom access policy, the Seventh Circuit found that the school district could not meet its burden to show an "exceedingly persuasive" justification for its sex-based classification. *Id.* at 1051–52 (citing *United*

*States v. Virginia*, 518 U.S. 515, 533 (1996)). In particular, the *Whitaker* court rejected the school district's asserted privacy rationale in strictly limiting bathroom access to sex assigned at birth: "What the record demonstrates here is that the School District's privacy argument is based on sheer conjecture and abstraction." *Id.* at 1052.[2]

Whitaker also explained that a state actor cannot defend a sex-based classification by relying on "overbroad generalizations" or "sex-based stereotypes." *Id.* at 1051 (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 138–39 (1994) (gender-based peremptory challenges in jury selection)).

***(2) Martinsville***

Six years after *Whitaker*, the Seventh Circuit reaffirmed its basic holdings and deepened the court's analysis in *Martinsville*. 75 F.4th 760. The *Martinsville* court was careful to frame the bathroom issue as one of access not sex-segregation: "Notably, [in *Whitaker*] we did not criticize the defendant school district's decision to maintain sex-segregated bathrooms. Our focus was on the district's policy for 'decid[ing] which bathroom a student may use.'" *Id.* at 767 (citing *Whitaker*, 858 F.3d at 1051).

The Seventh Circuit ratified the *Whitaker* approach to plaintiffs' equal protection claims. The lower courts in *Martinsville* found that the bathroom access policies at issue relied on inherently sex-based classifications and were thus subject to heightened scrutiny.[3] *Id.* at 772. Applying that standard, the courts found that the school districts did

[2] The school district in *Whitaker* offered isolated complaints from parents as evidence supporting its privacy interest, but not a single complaint from a student or any evidence that the plaintiff was less discreet in the bathroom than any other student. *Id.* at 1052 ("Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall.").

[3] Neither *Whitaker* nor *Martinsville* reached the question of whether transgender persons constitute a quasi-suspect class in their own right for the purpose of equal protection analysis, and nor do I in my decisions in this case. This is not a comment on the strength of this argument, which has been undertaken persuasively

not meet their burden to show an "exceedingly persuasive justification" for sorting students into bathrooms based on sex assigned at birth. *Id.* (quotation omitted). "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Id.* (quoting *Virginia*, 518 U.S. at 516). Again, the school districts argued that privacy interests justified their bathroom access policies. Again, the Seventh Circuit rejected this argument on the record before it. *Id.* at 773 ("Martinsville has not identified how A.C.'s presence behind the door of a bathroom stall threatens student privacy."). In short, the *Martinsville* court concluded that "[g]ender-affirming facility access does not implicate the interest in preventing bodily exposure, because there is no such exposure." *Id.*

***(3) Skrmetti***

In 2025, the Supreme Court decided *Skrmetti*, which involved a challenge to a Tennessee law barring doctors from prescribing puberty blockers or hormones to minors for the purpose of gender transition. Notwithstanding the panel's choice to vacate its affirmance of the preliminary injunction in this case soon after the decision issued, I do not find that *Skrmetti* significantly calls into question Seventh Circuit precedent on school bathroom access policies. *Skrmetti* was not a Title IX case and included only an equal protection claim. *Skrmetti*'s essential holding was that SB1, the Tennessee law at issue, classified based on age and medical treatment—not sex or transgender status—and thus was subject to only rational basis scrutiny under an equal protection framework, a standard the law easily satisfied. *Skrmetti*, 605 U.S. at 510–12 ("SB1 does not classify on

---

by other courts. *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610–11 (4th Cir. 2020) (collecting cases*); Flack v. Wisconsin Dep't of Health Servs.*, 328 F.Supp.3d 931, 952–53 (W.D.Wis. 2018).

any bases that warrant heightened review.”). Relatedly, *Skrmetti* pointed to the “considerable evidence” offered by Tennessee regarding the risks associated with the banned medical treatments, particularly for minors, as well as the unsettled nature of the existing research on transgender healthcare in general. *Id.* at 509, 522–23.

*Skrmetti* left the intermediate scrutiny equal protection analysis for sex-based classifications undisturbed, while finding the Tennessee law satisfied the lower rational basis standard. Most pertinently for our purposes, the Supreme Court reiterated *Whitaker*’s instruction that “a law that classifies on the basis of sex may fail heightened scrutiny if the classifications rest on impermissible stereotypes.” 605 U.S. at 516; *see also id.* at 510 (noting that sex-based distinctions “too often reflect stereotypes or overbroad generalizations about the differences” between the sexes).

***(4) B.P.J.***

The Supreme Court’s recent decision in *B.P.J.* presents a more significant challenge to Seventh Circuit rulings on school bathroom access policies that affect transgender students—but primarily with respect to Title IX claims, which are no longer a factor for plaintiff. *B.P.J.* consolidated two cases: one involved Title IX and equal protection challenges to a West Virginia law mandating that eligibility for girls’ sports be based on biological sex; the second involved an equal protection challenge to an Idaho law that barred transgender female students from female athletic teams based on reproductive anatomy and other biological markers. 146 S.Ct. 2356 (2026). On the equal protection claims, the Court concluded that the states did not violate the Fourteenth Amendment by maintaining female sports teams for biological females. *Id.* at 2373.

The Court's equal protection analysis in *B.P.J.* is straightforward and alters little for the purpose of analyzing bathroom access policies under prior cases in the Seventh Circuit. The state laws in *B.P.J.* authorized female and male sports teams and limited participation on those teams based on biological sex. Unsurprisingly, the Court found this to be "a sex-based classification that trigger[ed] intermediate scrutiny." *Id.* at 2374. Applying the familiar equal protection framework, the Court assessed whether the states had shown that their sex-based classifications served important governmental interests, and whether the means employed were substantially related to achieving those interests. *Id.* (citing *Virginia*, 518 U.S. at 533). The Supreme Court found that the states had a compelling interest in ensuring safety and competitive fairness in school sports teams, discussing at some length the physical risks associated with biological males playing contact sports with females and the zero-sum logic that would disadvantage girls and women forced to compete with boys and men for roster spots, playing time, medals, etc. *Id.* at 2375. The Court had no trouble concluding that the states had met their burden to show a persuasive justification for segregating sports teams by biological sex.

In discussing sex-based classifications and the intermediate scrutiny standard more generally, *B.P.J.* noted that "under the intermediate scrutiny test … the 'validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case.'" *Id.* at 2376 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989)). The state classification being reviewed need not "be capable of achieving its ultimate objective in every instance." *Id.* (quoting *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001)).

### b. *Continuing viability of equal protection claim*

The Equal Protection Clause, an anti-discrimination rule grounded in the Constitution, precludes state action that irrationally discriminates between persons or groups of persons. *See K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 614–15 (7th Cir. 2024). Under the Clause, discrimination means unequal treatment based on a characteristic likely to be regulated for suspect purposes. *Id.* Equal protection analysis subjects state action to a particular level of judicial review depending on which class is being treated differently. Laws or actions that discriminate based on sex receive intermediate scrutiny, wherein the state must provide an "exceedingly persuasive justification" for the sex-based classification by pointing to an "important governmental objective" that is "substantially related" to the classification at issue. *Martinsville* at 772; *B.P.J.* at 2373.

Throughout the briefing in support of their motion for judgment on the pleadings, defendants characterize plaintiff's equal protection claim as asserting discrimination based on transgender status, not sex. This misstates the claim and the legal precedent supporting that claim, which is undisturbed by the Supreme Court decisions in *Skrmetti* and *B.P.J.* Plaintiff's primary equal protection claim is a sex-based challenge.[4] She asserts that MASD's bathroom access policy triggers intermediate scrutiny under two theories: (1) the policy facially classifies based on "original sex assigned at birth"; and (2) the policy relies on sex-stereotyping. ECF No. 82 at 18. I am not convinced that sex-stereotyping is a distinct theory in the equal protection context, as in the Title IX context,

[4] In the alternative, plaintiff also pleads discrimination based on transgender status, which would require a legal finding that transgender persons constitute a quasi-suspect class under equal protection theory. As noted above, I have declined to make this finding here because plaintiff's sex-based claims remain viable and the same level of scrutiny applies.

since the application of heightened scrutiny still must be triggered by an actual classification based on sex, regardless of whether this classification arises out of an unfounded stereotype. So it would seem that the two theories collapse into one, and I will analyze them together.

It is beyond question that MASD's Policy 5514 classifies based on sex, triggering intermediate scrutiny: "The School Board of the [MASD] affirms its position that students should use the locker rooms and bathrooms of their *sex at birth*." ECF No. 5-3 (emphasis added). *Whitaker* and *Martinsville* applied intermediate scrutiny in reviewing the bathroom access policies at issue in those cases, and nothing in the Supreme Court's decisions in *Skrmetti* or *B.P.J.* calls this approach into question. *See B.P.J.*, 146 S.Ct. 2356 at 2374 (finding that laws limiting sports teams to biological females "make a sex-based classification that triggers intermediate scrutiny"). Indeed, as plaintiff notes, every Court of Appeals to consider the question has held that this type of school bathroom access policy classifies based on sex, regardless of how they ultimately rule on the question of liability. ECF No. 82 at 18.

Defendants nevertheless argue that *Skrmetti* somehow demonstrates that Policy 5514 should trigger only a rational basis review. ECF No. 73 at 24-25. As discussed above, *Skrmetti* held that a Tennessee law barring minors from receiving certain medical treatments for the diagnosis of gender dysphoria did not enact a classification based on sex or, for that matter, transgender status. The Supreme Court held that SB1 classified by age and medical diagnosis/treatment only and did not trigger intermediate scrutiny for that reason. The Tennessee statute is entirely distinguishable from the school district policy at issue in this case, which explicitly classifies "according to each student's original

sex assigned at birth." ECF No. 5-16. Defendants' assert that "merely separating the sexes into two groups does not trigger heightened scrutiny," ECF No. 83 at 4. In fact, it does. *See B.P.J.*, 146 S.Ct. at 2374 (subjecting laws that divide male and female sports teams by biological sex to intermediate scrutiny).

A throughline running through defendants' briefing is that Policy 5514 is unassailable because, assertedly, it does not prohibit conduct for biological males that it permits for biological females, and that this is the proper inquiry post-*Skrmetti* and post-*B.P.J.* This argument is incorrect on both counts. Policy 5514 *does* prohibit conduct for one biological sex that it permits for the other—biological girls can use the girls' bathroom but biological boys (like plaintiff) cannot, whatever their individual circumstances. That is the heart of the dispute. The same question was presented in *B.P.J.*: the challenged laws permitted biological girls to play on girls' teams, but not biological boys (including transgender girls). The Supreme Court found that this sex-based classification was justified because of the unique context of competitive team sports.[5] The ultimate question in evaluating plaintiff's equal protection claim at the summary judgment or trial stage will be whether the justifications proferred by MASD for Policy 5514 are similarly persuasive. In short, neither *Skrmetti* nor *B.P.J.* stands for the proposition that defendants assert repeatedly— i.e., that when biological girls and biological boys are each allotted their own bathroom that is the beginning and the end of the equal protection analysis.

---

[5] The *B.P.J.* decision is replete with language limiting its holding to the sports context and linking the reasonableness of separate sports teams for biological males and females to legitimate concerns about safety and competitive fairness. *See, e.g.*, *B.P.J.* at 2372 ("we also must recognize the distinctiveness of competitive sports"); and *id.* (the "hard reality of sports cannot be ignored or swept under the rug").

Based on the above discussion, I do not find that *Skrmetti* or *B.P.J.* substantially undermine the Seventh Circuit cases that plaintiff relied on to press her equal protection claim in the preliminary injunction phase of this case. As we are now back to square one, since defendants' motion is for judgment on the pleadings, all that is required of plaintiff on her equal protection claim is that she adequately allege that defendants' bathroom access policy and actions toward her have discriminated against her based on her sex, and that this caused her injury. She has done so. Defendants' motion for judgment on the pleadings on plaintiff's equal protection claim is denied. Plaintiff has also alleged that defendants' conduct was not substantially related to any important governmental interest, while defendants' oppose this view. This factual dispute is central to the discovery sought by plaintiff in her motion to compel, discussed below.

**B. Plaintiff's Motion to Compel**

Federal Rule of Civil Procedure 26(b) allows parties to obtain discovery

> regarding any non-privileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the *importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). District courts have broad discretion in deciding motions to compel. *See James v. Hyatt Regency Chicago*, 707 F.3d 776, 784 (7th Cir. 2013). A district court may grant or deny a motion to compel in whole or in part and fashion a ruling appropriate for the circumstances of the case. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

Plaintiff moves to compel on nine requests for production ("RFPs") and three interrogatories first served on defendants in November 2025. *See* ECF Nos. 97-2, 97-3.

The parties have engaged in efforts to confer and narrow the scope of the outstanding discovery requests with limited success. In support of her motion, plaintiff filed an "Appendix A" that sets forth the RFPs and interrogatories at issue. ECF. No. 97-1. To characterize these requests very generally, they include RFPs requesting:

(1) documents related to defendants' awareness of and response to requests for bathroom access from transgender[6] students other than plaintiff (RFP 14);

(2) complaints lodged with defendants regarding treatment of or policies regarding any transgender student, or alleging bullying or harassment of such students (RFPs 15–16);

(3) documents related to the actual presence of any transgender students in MASD bathrooms or locker rooms reserved for the opposite biological sex from such students, and any complaints related to that presence (RFPs 17–18);

(4) all communications related generally to the application of MASD bathroom policies to transgender students other than plaintiff (RFP 19); and

(5) documents related to requests for exceptions or accommodations under Policy 5514, or regarding bathroom use generally, from transgender students other than plaintiff, and the outcome of such requests (RFPs 20–22).

[6] The RFPs use the umbrella phrase "transgender, non-binary, or gender nonconforming," which is omitted here only for summary purposes. Defendants object generally to requests for documents and information on non-binary or gender nonconforming students as beyond the scope of relevant discovery because plaintiff is transgender; but this objection is not consistent with the broad understanding of relevance under Fed. R. Civ. P. 26(b).

Also described generally, the interrogatories at issue request information:

(1) identifying all public and private meetings involving defendants at which bathroom use by transgender students was discussed (Interrogatory 7);

(2) describing all communications made or received by defendants regarding facility access or access to sex-segregated activities by transgender students (Interrogatory 8); and

(3) identifying all complaints concerning plaintiff's use of sex-segregated facilities or programming, or bathroom access by other transgender students (Interrogatory 13).

While it is not clear based on the parties' briefing, it appears that plaintiff requests these documents and information for a timeframe spanning "**the beginning of the 2020–2021 academic year to the present**." *See* ECF No. 97-6 at 4 (original emphasis).

Before addressing arguments about the scope of plaintiff's requests, a word about the current scope of this litigation. As has been recounted, plaintiff no longer seeks prospective injunctive relief. The only type of relief sought is compensatory damages for emotional distress arising out of a two-month period when she was subject to MASD policies and actions related to her use of the girls' bathroom as a transgender girl. What began as a lawsuit that had some of the trappings of a facial challenge to a district-wide policy on bathroom access is now very much an individual action for damages based on a discrete time period.[7] Although the question of liability is the same regardless of relief

[7] I should note that the preliminary injunction entered by me and initially affirmed on appeal enjoined the operation of Policy 5514 and defendants' actions only with respect to plaintiff. Also, to be fair, the complaint frames the case as an as-applied challenge, focusing on defendants' policies and practices as they affected plaintiff alone. However, the distinction between facial and as-applied challenges is very difficult to draw, especially at the preliminary injunction stage. *See Jones v. Critchfield*, 803 F.Supp.3d 1078, 1092–95

sought—i.e., whether MASD's bathroom access policies and practices violated the Equal Protection Clause in relation to plaintiff—the overall reach of the case impacts the court's consideration of proportionality in reviewing discovery requests under Fed. R. Civ. P. 26(b).

With this in mind, I see two overarching issues with the scope of plaintiff's motion to compel. The first is the pursuit of information and documents related to other transgender students. The second is the broad time period for which discovery is sought. Plaintiff argues that she is justified seeking this material under liberal discovery rules because: (1) information about how MASD has handled other transgender students' bathroom access will allow her to explore how defendants' policies work and counter any defenses raised; (2) the material is relevant to whether there is a substantial relationship between Policy 5514 and the underlying governmental interests asserted by defendants, or whether the adoption of the policy was rooted in animus against transgender persons; and (3) information about defendants' treatment of other transgender students is relevant to her own claim for damages based on a theory that defendants were aware she would experience bullying and harassment when MASD targeted her as a transgender student.[8] ECF No. 97.

The first two justifications make sense in general, but the relevant time period proposed by plaintiff seems far too broad. The complaint alleges that until April 2023

(D.Idaho 2025) (discussing as-applied vs. facial challenges in the context of state statute restricting university bathroom usage by biological sex).

[8] On the last point, plaintiff cites *Banks v. Baraboo School District*, a case in which the plaintiff sought damages for long-standing and severe racial and sexual harassment by other students, to which school officials were alleged to be deliberately indifferent. No. 20-cv-36-wmc, 2020 WL 5751415 (W.D.Wis. Sept. 25, 2020). Defendants argue, and I agree, that *Banks* is distinguishable in many ways and highlights the fact that here plaintiff has not alleged that MASD fostered a pervasive district-wide culture that encouraged the bullying and harassment of transgender students.

plaintiff felt happy and welcomed at school in all respects, ECF No. 1, ¶ 21, and that growing opposition to her use of the girls' bathroom beginning in April culminated in the implementation of Policy 5514 on June 26, 2023, *id*. ¶¶ 22-53. Given this timeline, it is highly unlikely that documents dating back as far back as 2020 are relevant to what appears to have been a sudden policy shift by MASD on transgender bathroom access. Similarly, since the central policy at issue in this case did not come into effect until June 2023, and then was enjoined with respect to plaintiff on July 11, 2023, the period for exploring the relevant "contours and operation of [d]efendants' policies" is also quite limited. ECF No. 97 at 8. Defendants' treatment of other transgender students after the injunction was entered protecting plaintiff is not relevant to her individual claim, which is based on what happened to her in April through July 2023. If the preliminary injunction were still in effect, or if plaintiff now sought a permanent injunction, she would be entitled to a broader sweep of documents relevant to defendants' ongoing compliance with constitutional standards. As it is, I do not see how materials related to defendants' policies, conduct, or communications after July 11, 2023, are relevant to establishing liability in this case. Based on these principles, the relevant time period for all RFPs and interrogatories set forth in Appendix A is **January 1, 2023 to July 11, 2023**.

This much narrower discovery window also serves to balance legitimate proportionality concerns regarding the production of material related to transgender students other than plaintiff. Further, plaintiff represents that she is not asking defendants to reveal the identities of any students. Thus, it appears that defendants' arguments related to the Family Educational Rights and Privacy Act have been resolved by plaintiff's agreement to accept de-identified information. ECF No. 102 at 11. Defendants still object

generally to the production of documents and information related to nonparties, arguing that such material is irrelevant and not proportional to the needs of the case. While defendants are correct that plaintiff's complaint does not include any allegations about other transgender, non-binary or gender nonconforming students, under broad discovery rules the information that plaintiff seeks about other students is calculated to lead to the discovery of admissible evidence. Specifically, information about other students could reveal a pattern of discriminatory treatment by the school district, show invidious motives for the implementation of Policy 5514, or shed light on the actual extent of the problem that MASD purportedly sought to address in implementing the bathroom access policy. All of this is relevant to whether defendants' actions with respect to plaintiff were "in substantial furtherance of important governmental objectives," which is indeed the central factual dispute left in this case.[9] *See Nguyen*, 533 U.S. at 70.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for judgment on the pleadings (ECF No. 72) is **GRANTED** as to plaintiff's claim under Title IX based on lack of subject matter jurisdiction; and **DENIED** as to plaintiff's claim under the Equal Protection Clause. **IT IS FURTHER ORDERED** that plaintiff's motion to compel (ECF No. 97) the Requests for Production and Interrogatories set forth in Appendix A (ECF No. 97-1) is **GRANTED in part** for the Relevant Time Period of **January 1, 2023 to July 11, 2023**, and **DENIED** in all other respects.

[9] Defendants assert variously that no relevant facts are in dispute, that the only issue left is damages, and that whether their stated "governmental interests satisfy constitutional scrutiny presents a question of law already before the Court." ECF No. 98 at 14. None of these assertions are correct.

The parties are advised that future discovery motions should be brought pursuant to Civil Local Rule 7(h) and must comply with the required page limitations.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge